MARGUERITE HYDE SUFFOLK & BERKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 81417, 93257.   Promulgated December 15, 1939.

*Calvin F. Selfridge, Esq.*, for the petitioner.
*Gerald W. Brooks, Esq.*, for the respondent.

1124

OPINION.

TURNER: The petitioner contends that no part of the income of the Leiter estate added to the corpus of the estate in 1932 and 1934, pursuant to court decree, constituted income distributable or taxable to her in the respective years. The respondent's position is that the petitioner is taxable on her proportionate share of such income on the ground that said income was distributable to her under the terms of the will, and the court decree did not effect a departure from the terms thereof.

Section 162 of the Revenue Acts of 1932 and 1934 provides as follows:

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, &ast; &ast; &ast; but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. &ast; &ast; &ast;

Under the will of the decedent the trustees were directed to pay out of the trust income the expenses of managing the trust estate and were authorized and empowered to use and apply such portions of net income derived from the trust estate as they deemed best, either in payment of mortgages or incumbrances upon the property or in making any improvements thereon. The remainder of the income was currently distributable to the named beneficiaries. A number of years prior to the years here in question the trustees expended substantial sums with respect to real estate owned by the trust and located in Chicago and Wyoming. The petitioner in 1923 instituted proceedings in the Superior Court of Cook County, Illinois, for the removal of her brother as trustee, for an accounting of the affairs of the estate, and a construction of the provisions of the will with re-

spect to the development and management of the parcels of real estate mentioned. As a result of this proceeding, the court on May 14, 1931, entered its decree construing the will and fixing the amounts of such expenditures properly chargeable to income and the amounts chargeable to corpus. There is no contention by either party to this proceeding that the amounts chargeable to income and the amounts chargeable to corpus were incorrectly determined. The court found that a portion of the amount which had been expended from corpus with respect to the two parcels of real estate and should have been expended from income, had been repaid from income to corpus, and further found that there still remained unpaid the total amount of $779,084.03, of which $422,746.82 should be paid immediately and the remainder, amounting to $356,337.21, should be amortized and repaid from income to corpus in equal installments over a period of nine years commencing January 1, 1931. The court further directed that such amortization be effected "by charging against the share of each income beneficiary, and crediting and paying over to corpus, such proportion of each annual installment as the distributable share of such income beneficiary bears to the total distributive income of said trust estate * * *; that the right to have the payments necessary to carry out the amortization directed by this decree is hereby imposed against those who are now, or may hereafter become, entitled to the income, and upon the income to which they are, or may be, so entitled, and in favor of those who are now, or may hereafter become, entitled to the corpus of the estate * * *."

There is no showing or claim that the income beneficiaries did not previously receive distributions of income which they would not have received if the expenditures in respect of the Chicago and Wyoming properties had been charged as they should have been, and we accordingly conclude that, to the extent the decree so charged the distributive shares of the income beneficiaries, they did receive distributions from the estate in excess of the income to which they were entitled. The court by its decree directed that corpus should be reimbursed for the amounts so expended which should, under the terms of the will, have been expended from income. It directed that this reimbursement should be effected by direct charge against the current distributable share of the income of each income beneficiary, stating specifically that the charge was "imposed against those who are now, or may hereafter become, entitled to the income, and upon the income to which they are, or may be, so entitled, and in favor of those who are now, or may hereafter become, entitled to the corpus of the estate." The situation here is similar to that considered by us in *Mary V. Pyle*, 16 B. T. A. 218. In that case the trustees of an estate created by will made an excessive distribution to the life

tenant during the year 1920. In 1921 the error was discovered and for the purpose of correcting the error the trustees withheld in that year from distribution to the life tenant an amount equal to the excessive distribution in 1920. Subsequently the court approved the 1921 account of the trustees in which the withholding described was reflected. Finding that the will under which the estate was created provided for the payment of the income of the estate to the life tenant in quarterly installments, we held that the entire income of the estate for 1921, undiminished in any amount whatsoever, was distributable to the life tenant and should have been included in computing her taxable net income for 1921. Our holding in that case is applicable here, and the respondent's action on this issue is sustained. Compare *Susan B. Armstrong*, 38 B. T. A. 658, wherein we concluded that the facts did not justify the conclusion that the withholding from the income of the beneficiary was in settlement of an obligation on her part to replace the impaired capital. In this case the court, by its decree, specifically made the obligation a direct charge on the shares of income currently distributable to the beneficiaries. Compare *Freuler* v. *Helvering*, 291 U. S. 35, in which it was held that where during a given taxable year an income beneficiary of a trust was actually paid an amount in excess of the amount to which he was entitled, he was taxable in such year only on the amount that was properly receivable by him in that year.

With respect to the item of $20,000 representing the rent due the Leiter estate on the Quinlan property for 1934, we do not have a case where the taxpayer had previously reported an item as income and is now claiming as a bad debt deduction the amount previously accrued and reported as income. The respondent has determined that the omission by the estate of the said item from gross income was erroneous and has increased rents in that amount, thereby determining that the petitioner's income should be increased pro rata. Such an increase by the respondent of the rental income of the estate is claimed as error in the petition.

Where an account has been properly accrued and later becomes uncollectible, the taxpayer's remedy is by way of a deduction and the requirements of the specific statutory provision must be met, and it may not be claimed that the item so accrued should not have been included in income in the first instance. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. With respect to inclusion in income in the first instance, however, it has been held that where the facts are such that the item in question is not collectible when due and its collection in the future is highly improbable, the taxpayer, even though on the accrual basis, is not required to report such income in his return. *American Fork & Hoe Co.*, 33 B. T. A. 1139; *Oregon*

*Terminals Co.*, 29 B. T. A. 1332; *Emanuel Solomon Ullmann*, 30 B. T. A. 764; *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730, 749; *Great Northern Railway Co.*, 8 B. T. A. 225, 269. From these cases, however, it is apparent that a taxpayer is justified in failing to accrue an income item which has become due only where the facts are such as to show that it is uncollectible when due and there is little or no likelihood of collection in the future.

In the instant case the petitioner called as a witness one of the officers of the real estate firm which acted as agent for the building to establish by opinion testimony the uncollectibility of the rent item at the time it became due and at all times subsequent thereto. The petitioner also relies on the financial condition of the lessee. The respondent claims that the rent item was properly accruable in 1934 and that the record is not sufficient to sustain the allowance of a deduction for a bad debt. He supports this contention by pointing to the right of the estate to declare a forfeiture of the lease and to repossess the real estate on which the lessee, or its assignor, had constructed the office building previously described. While we are not impressed with the argument of petitioner that the half of the building standing on the Leiter property had no value, neither do we think it follows, as argued by the respondent, that the existence of the right of the lessors to declare a forfeiture of the lease and to repossess the property, including the building thereon, establishes a value in or the collectibility of the claim for rent. Obviously the building on the Trude and Leiter properties did have value. It consistently in all of the years shown by the record produced income in excess of its operating expenses, maintenance charges, and taxes. The petitioner bases its claim of no value on the testimony of the witness previously mentioned and on the fact that the entrance to the building was located on the Trude property and that the part of the building located on the Leiter property probably could not be cut off from that portion located on the Trude property and operated profitably as a separate building. Obviously there was no thought or intention of such action. The Trude and Leiter estates had leased their properties to the same interest undoubtedly with the understanding that the building to be erected on both properties should be a single operating unit. The estates had proceeded jointly with their efforts to collect rent during the period described by the record and there is nothing to indicate or suggest that there was any likelihood that they would not continue to operate jointly if the leases should be forfeited. On the other hand, a forfeiture of the leases would merely result in the reacquisition by the lessors of real estate which had been enhanced in value by the erection of a building and not only would not effect the payment of rent past due but would in

this instance eliminate all possibilities of subsequent collection of the rent items. The question as to whether gain is realized by a lessor upon repossession of its property where the lessee has erected a valuable building thereon is an entirely different question.

For the answer to the issue here we must look to the condition of the lessee corporation at the time of accrual and its prospects for the future. Prior to 1933 the lessee had apparently paid ground rents in full. It had become delinquent, however, with respect to real estate taxes and the interest on its bonds. At June 30, 1933, it owed real estate taxes as far back as 1928 and in the amount of $194,985.08, and by that time was in arrears with respect to ground rent in the amount of $16,666.67. There was accrued and unpaid bond interest in the amount of $267,480.23 and the books disclosed an operating deficit of $307,862.01. The existence of unpaid interest, although substantial in amount, is of no concern here. Regardless of whether or not under other circumstances the claim of the bondholders for the unpaid interest might be on a parity with the claim for ground rents, the claim of the bondholders was secured only by the lease and the building, and the existence of the right in the lessors to forfeit the lease and to take over the property, including the building, clearly put the lessors in the position of being preferred with respect to their claims for ground rent over the claims of the bondholders for unpaid interest. The bondholders recognized that fact in 1934, when they abandoned efforts to reorganize under the Bankruptcy Act. Apparently unpaid real estate taxes had accrued to such an extent that by June 1, 1933, it was necessary to devote all of the income over and above operating expenses and necessary maintenance charges to the payment of such taxes until they were paid. The facts show that the building was not producing over and above operating expenses and maintenance costs an amount sufficient to meet the current requirements for real estate taxes and ground rents. Accordingly, in order to avoid a loss of the property for taxes, it was necessary to apply such amounts as might otherwise be available for the payment of ground rents to the payment of taxes which had become due but were unpaid. If it was reasonable to assume that the profits would increase to the extent that an excess over current requirements might be realized in the future, there would be no merit in the claim of the petitioner here. Prior to the taxable year, the lessors had agreed in May 1933 to permit the lessee to continue for the fiscal year ending May 31, 1934, even though it was delinquent in the payment of its ground rent, and to continue operations thereafter if the net income from operations for that period was $95,000 or more, which amount would have been sufficient to meet current needs for taxes and ground rents and leave a small balance

over. The profits realized were not sufficient in amount to equal current requirements, however, and a special committee composed of representatives of the two lessors and the lessee took over supervision of operations. At no time up to June 1, 1938, had the building produced an amount sufficient to meet its current requirements. The lessors had received nothing with respect to ground rents since June 30, 1933, and on that date, as we have noted, there was already outstanding an unpaid balance of $16,666.67. It is true that by that time real estate taxes and the interest thereon had been paid in full up to and including the year 1934 and a substantial portion, if not all, of the taxes for 1935 had been paid, but in the meantime an additional $160,000 in ground rents had become due and remained unpaid. There had been an increase in operating profits, but there had been also a gradual increase in real estate taxes, and on June 30, 1938, one month after the operation of the building under supervision of the special committee was to come to an end, the Leiter estate, and presumably the Trude estate, served notice of default on the lessee. In face of such notice of default, the only payment shown on delinquent ground rent was the amount of $1,000 paid to the Leiter estate on July 12, 1938.

Taking into consideration the financial condition of the lessee in 1934, when the rent here in question became due, and the prospective receipts from operation of the building for the future, as corroborated by the actual figures covering operations for some three years thereafter, it is our opinion, under decisions previously cited, that the claim of petitioner, that ground rents which became due and payable in 1934 should not be included in the income of the Leiter estate, should be sustained.

The remaining issue involves the deductibility by the Leiter estate in 1934 of $16,592.55 representing real estate and personal property taxes of the estate for that year. The portion of the stipulation relating to this issue is set out verbatim in the last paragraph of our findings of fact. An examination of the exhibits mentioned in that paragraph discloses that in 1934 the estate accrued real estate taxes in the amount of $178,201.21 and deducted that amount in its return for that year, but respondent allowed only $116,809.65 of the deduction taken, the latter amount representing the total of such real estate taxes for 1934 as were paid by the estate in November 1935 and May 1936. According to the stipulation the estate, subsequent to such payments, has made payment of additional real estate and personal property taxes for 1934 in the amount of $16,592.55. This amount the petitioner contends was deductible by the estate in determining the net income distributable to the income beneficiaries. Despite the fact

1136

that the respondent has stipulated that "Said taxes paid over and above the taxes allowed reduce the petitioner's share of the income of the Leiter estate $5,195.38 (being 31.3115% of said $16,592.55)", and the fact that it is specifically determined in the deficiency notice for the 1934 deficiency that the Leiter estate keeps its books on the accrual basis, the respondent, on brief, urges that we should find that the amount is not deductible because of failure of the petitioner to prove a number of other facts not touched upon in the stipulation. Suffice to say that, since the respondent determined that the estate kept its books on the accrual basis and all the evidence of record relating to the point is to the same effect and since the parties have stipulated that the taxes of $16,592.55 were for 1934 and that their payment reduced the petitioner's distributable share of the estate income by $5,195.88 (31.3115 percent of said amount of taxes), we think the evidence of record is sufficient to sustain the conclusion that the amount of taxes in controversy was deductible by the estate in 1934 in determining its net income distributable to the beneficiaries and that the petitioner's share of such income as determined by the respondent is to be reduced by $5,195.38. Accordingly the petitioner is sustained on this issue.

*Decision will be entered under Rule 50.*