J. Edward Johnston, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 93768. Promulgated March 6, 1940.

*Randolph E. Paul, Esq., Charles McH. Howard, Esq.,* and *Charles B. McInnis, Esq.,* for the petitioner.
*Lewis S. Pendleton, Esq.,* for the respondent.

OPINION.

LEECH: Petitioner in this proceeding seeks redetermination of deficiencies in income tax for the calendar years 1934 and 1935, in the aggregate amount of $184,211.14. The principal question involved is whether petitioner is taxable on the ordinary income of any or all of five trusts created by him for the benefit of various members of his family. Two subordinate issues are (1) whether capital gains, arising by reason of the receipt of certain payments on an installment obligation in favor of the trustee of three of the trusts, are properly taxable to petitioner, and (2) whether petitioner may deduct from his gross income, commissions paid to a trustee of a testamentary trust, where the total income therefrom is tax-exempt. The case has been submitted on a stipulation of facts and attached documentary evidence. We find the facts as stipulated.

Petitioner is an individual residing in Baltimore, Maryland. On September 30, 1926, he transferred, in trust, 1,000 shares of class B common stock of the R. J. Reynolds Tobacco Co., to be held by the Safe Deposit & Trust Co. of Baltimore as trustee for the benefit of his mother, Lola E. Johnston. The trust deed provided that the net income from the trust should be paid to Lola E. Johnston for life. Upon her death, the trustee was to return the trust estate to petitioner, or to his estate should he then be dead. Petitioner reserved powers to direct sales and investments and to change the trustee, exercisable during his life, but expressly disclaimed the reservation of any power to revoke, change, or alter the trust. Both petitioner and his mother are still living. Pursuant to the terms of the trust, she received $9,072.15 in 1934 and $9,187.50 in 1935, constituting the net income of the trust for those years. She was not destitute prior to or at any time after the creation of this and the following trusts, and would not have been destitute during the taxable years even if the trusts had not been established.

On June 3, 1932, petitioner created three additional trusts, the terms of which are substantially similar. In each one, the Safe Deposit & Trust Co. of Baltimore was trustee, and the income was payable jointly to petitioner's mother and one of his three minor children. That is, in the first trust one-half of the net income was

to be paid to Lola E. Johnston for life, but if in any year this one-half, in the opinion of the trustee, should be insufficient for her support and maintenance in the manner of living to which she had been accustomed, then the trustee was authorized and directed to invade both the remaining half of the income and the corpus to the extent necessary for her proper maintenance and support. In determining the amount necessary, the trustee was directed to exercise a liberal discretion. The remainder of the net income was to be accumulated by the trustee, except that if Lola E. Johnston during her lifetime should determine that all or any part of this remaining net income or accumulations thereof was needed for the support or education of petitioner's son, the trustee was to apply the income or accumulations to those purposes upon her written request. Upon her death, the trust estate was to be transferred to petitioner, should he then be living, except that any accumulated income was to be retained in trust for the benefit of the child beneficiary on conditions not here material. Should petitioner not survive Lola E. Johnston, the trust was to continue and, in no event, could the corpus revert to petitioner's estate. Petitioner retained no power of revocation; but Lola E. Johnston was given the power during her life to order a reconveyance of corpus, but not accumulated income, to petitioner.

In the second and third trusts of this group, the provisions were the same as above in all material respects, except that petitioner's wife, instead of his mother, was given the power to direct the application of remaining income to the education and support of the child beneficiary. Petitioner's wife and mother did in fact exercise this power and gave directions, operative in both taxable years, that the entire second half of the trusts' income be applied to the support and education of the respective three children. In other words, petitioner's mother received one-half the income of each trust, outright, and either she or the wife received the balance on behalf of the respective children. All three children were minors in the taxable years.

The corpora of this group of trusts consisted, in each case, of a block of R. J. Reynolds Co. class B common stock, and of petitioner's equitable interest in certain assets held in trust for him under the will of R. J. Reynolds, deceased, as appointed by the will of Katharine S. Johnston, deceased. These latter assets comprised additional R. J. Reynolds stock and an account receivable described as "$490,-544.60 Balance Debt of Directors and Employees of the R. J. Reynolds Tobacco Company dated December 21, 1927. Interest at 5%." Each trust received one-third of petitioner's interest in this account receivable.

R. J. Reynolds had died in 1918 and had left a testamentary trust of R. J. Reynolds Tobacco Co. stock for the benefit of his widow, Katharine S. Reynolds. She married petitioner, appointed her interests in this trust to petitioner by will, and died in 1924. In 1927, the trustee under Reynolds' will sold 6,733 shares of this stock to the directors and employees of the Reynolds Co. By the terms of Reynolds' will, proceeds from any sales of trust assets were to be accumulated, invested only in Government bonds, and distributed to his widow (or her appointee) only upon the termination of all the various trusts created by Reynolds. This could not occur until the youngest child of R. J. Reynolds reached the age of 28, which did not happen until after 1935. Meanwhile, and on June 3, 1932, petitioner transferred his equitable interest in the unpaid balance of the installment obligations into the group of three trusts presently under discussion. Capital gains from the sale were received on the installment basis and were added, in equal shares, to the corpora of the three trusts. In the taxable years, these capital gains were in the respective amounts of $109,291.78 and $5,392.04.

On June 3, 1932, petitioner created a fifth trust, the Safe Deposit & Trust Co. of Baltimore again being the trustee, consisting of 4,000 shares of R. J. Reynolds Tobacco Co. class B common stock and petitioner's interest in 11,000 shares of the same stock held in trust for him by the Safe Deposit & Trust Co. under the will of R. J. Reynolds as appointed by the will of Katharine S. Johnston, deceased. By this deed, the trustee was directed to pay the net income from the trust to Mathilde Manly Johnston, petitioner's wife, "for and during her life, but if in the opinion of the Trustee said income be insufficient for her maintenance and support in the manner in which she has been accustomed to living, then said Trustee is hereby authorized and directed to pay over to her such part or parts of the corpus as it in the exercise of a liberal discretion towards her deems necessary for such purposes." Upon her death, the corpus was to be returned to petitioner, if he should then be living, or divided into shares for the benefit of petitioner's children, should he then be dead. Petitioner reserved power to control sales and investments of trust corpus, but did not retain powers to revoke or alter. The *inter vivos* power to direct a reconveyance of corpus to petitioner was vested in the beneficiary, Mathilde Manly Johnston.

The income arising from all five trusts was reported and returned by the respective beneficiaries. Respondent seeks not only to tax this ordinary income to petitioner, but also to add to that amount the capital gains realized by the group of three trusts created for the combined benefit of petitioner's mother and his three minor children, as above described. In addition, he has denied petitioner's right to

deduct commissions paid to a trustee of a trust, the income from which came, wholly, from tax-exempt interest on Federal and state bonds. These commissions amounted to $510.33 in 1934 and $478.10 in 1935.

The theories on which respondent urges the taxability of the ordinary trust income to petitioner are that the trusts fall under section 166 of the Revenue Act of 1934; that they come within section 167 of the Revenue Act of 1934, and that they are governed by the rule of *Douglas* v. *Willcuts*, 296 U. S. 1.

Respondent practically concedes, on brief, that section 166 has no application here. Petitioner is vested with no powers of revocation with respect to any of the five trusts. The fact that he retained a reversion in the corpus by virtue of the trust provisions is not power to revest the corpus, within the statute. *Phebe Warren McKean Downs*, 36 B. T. A. 1129; *John Edward Rovensky*, 37 B. T. A. 702; *William E. Boeing*, 37 B. T. A. 178.

In four of the trusts, a power to revest the corpus in the grantor exists, but in each of these cases it is vested in the holder of a substantial adverse interest. There is nothing, consequently, to justify taxing petitioner under section 166 on this account. *Paul W. Litchfield*, 39 B. T. A. 1017. Respondent relies chiefly on *John N. Fulham*, 40 B. T. A. 48, to support his contention that Lola E. Johnston's adverse interest did not extend to that half of the net income which was set aside for support of the children (or for accumulation as the case might be). The *Fulham* case is distinguishable in that there the discretion of the trustee to pay anything to the wife was absolute, and she was not regarded in the trust deed as a beneficiary, while here the trustee had discretion only as to the ascertainment of an objective fact, after which it was mandatory upon it to make liberal payments to Lola E. Johnston, who throughout the trust instruments is plainly depicted as a primary beneficiary.

The second theory advanced by respondent requires us to consider only three of the trusts, namely, the group created for the combined benefit of petitioner's mother and his three minor children. There are no provisions for accumulations of income in the other two trusts.

To recapitulate, each of these three trusts provided that one-half of the net income should be paid, outright, to Lola E. Johnston, and that the other half should be accumulated, except that if Lola, in one trust, and Mathilde Manly Johnston, in the two remaining trusts, should so direct, the accumulations were to be used to support and educate the respective child beneficiaries. In both taxable years all of these halves of the trust incomes were used, pursuant to appropriate instructions, to support and educate the children. Upon the

death of Lola, the corpora, *but not the accumulations of income*, were to be returned to petitioner if he were then alive, but otherwise the trusts were to continue. As to such accumulations of ordinary income, the provisions of section 167 do not apply,[1] since there is no possibility of their being accumulated for petitioner's benefit.

The real question relates to the capital gains which arose, during the taxable years, from the sale in 1927 of Reynolds Tobacco Co. stock, part of the corpus of the R. J. Reynolds trust. The instrument creating that trust provided that such gains were to be accumulated, invested in Government bonds, and not distributed to Katharine S. Reynolds (or in consequence, to her appointee) until the youngest Reynolds child should attain the age of 28—a fact that did not occur until after 1935. Petitioner, in 1932, had transferred his interest in such gains, received by the testamentary appointment of his wife, in equal shares to the three trusts he created for the benefit of his wife and children. At the time of this transfer, the capital gains were being held for distribution to petitioner only in his capacity as ultimate beneficiary of the Reynolds trust. The issue here is whether these gains, for 1934 and 1935, were taxable to petitioner under section 167, *infra*. We think they were not.

The parties have stipulated that these gains were distributed by the Reynolds trust in the taxable years to the three trusts created by petitioner. If that be so, such distribution and receipt were in direct violation of the provisions of the Reynolds trust in that the trust created therein had not terminated by the youngest Reynolds child becoming 28 years of age. That being so, such distribution and receipt are ineffective here since the trusts created by petitioner received these gains with a concurrent obligation to return them. The result follows that these gains were not those "of" the trusts created by petitioner but were the capital gains of and taxable to the Reynolds trust. Revenue Act of 1932, sec. 161 (a) ; *Freuler v. Helvering*, 291 U. S. 35.

The third reason advanced for taxing the income of the five trusts to petitioner is that these trusts fall within the rule announced in *Douglas v. Willcuts, supra*, in that their incomes were used to discharge legal obligations of the grantor.

It is stipulated that petitioner's mother was not destitute. Thus, under controlling Maryland law, petitioner had no legal obligation

---

[1] The pertinent part of the section is 167 (a) (1) :

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor.

to support and maintain her. *Bagby*, Annotated Maryland Code, 1924, art. 27, secs. 91–93. It follows that no such obligation of petitioner was discharged even if the trust instruments did require any of their income to be so used. Consequently he is not taxable on the income of the trust for the mother alone, or on that half of the income of the three trusts in favor of the mother and the children which was payable to the mother.

In the trust for petitioner's wife, Mathilde, the trustee was directed to pay the net income to her "for and during her life, but if in the opinion of the Trustee said income be insufficient for her maintenance and support in the manner in which she has been accustomed to living, then said Trustee is hereby authorized and directed to pay over to her such part or parts of the corpus as it in the exercise of a liberal discretion towards her deems necessary for such purposes." The limitation on the right of the trustee to invade corpus for the wife, we think, effectively restricts her use of the income to support and maintenance. Accordingly, the rule of *Douglas* v. *Willcuts*, *supra*, applies and the income so paid to her is taxable to petitioner, settlor.

We consider now that half of the income of the three trusts, created in each instance for the benefit of petitioner's mother and a minor child, which might be paid to the respective child beneficiary for its support and education. Each of these trusts provided that one-half of the income was to go to the mother outright. The other half was to be accumulated by the trustee, but, if the mother in one or the wife in the two others should so direct, the income was to be paid over to the child beneficiary for its support and education. The record shows that written directions of the mother and the wife were operative in the taxable year so that all of the second half of the income of each of these three trusts was in fact paid over to the respective child beneficiary for its support and education.

In view of this actual use of the income to discharge petitioner's legal obligations to his children, we hold petitioner is taxable on one-half the income of these three trusts. *E. E. Black*, 36 B. T. A. 346; *Percy M. Chandler*, 41 B. T. A. 165; *Dorothy Whitney Elmhirst*, 41 B. T. A. 348.

The last question is whether the Commissioner properly disallowed deductions claimed by petitioner for commissions paid to the trustee of a testamentary trust, the total income from which is concededly tax-exempt. Since the trust was, of course, a separate legal taxable entity, such deduction is allowable only to the trustee of the trust. Cf. *John H. Watson, Jr., et al., Trustees*, 35 B. T. A. 706.

Reviewed by the Board.

*Decision will be entered under Rule 50.*