FREULER, ADMINISTRATOR, *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.*

No. 129. Argued December 8, 1933.—Decided January 8, 1934.

---

* Pursuant to stipulation, the decisions in the following cases are reversed on the authority of this case: Nos. 130 and 131, *Freuler, Administrator,* v. *Helvering,* on writs of certiorari to the Circuit Court of Appeals for the Ninth Circuit; No. 139, *Marguerite T. Whitcomb* v. *Helvering;* No. 140, *Charlotte A. W. Lepic* v. *Helvering;* No. 141, *Marie M. E. G. T. Whitcomb* v. *Helvering;* Nos. 142 and 143, *Charlotte A. W. Lepic* v. *Helvering;* and No. 144, *Marie M. E. G. Whitcomb* v. *Helvering,* on writs of certiorari to the Court of Appeals of the District of Columbia.

Messrs. *Claude R. Branch* and *Felix T. Smith,* with whom *Messrs. W. W. Spalding* and *Robert A. Littleton* were on the brief, for petitioner.

*Mr. Erwin N. Griswold,* with whom *Solicitor General Biggs* and *Messrs. Sewall Key* and *John MacC. Hudson* were on the brief, for respondent.

Mr. Justice Roberts delivered the opinion of the Court.

A. C. Whitcomb, a resident of California, died in 1889, and by his will, probated in that State, gave the residue of his estate in trust, one-third of the income to be paid to his widow for life, with limitations in remainder. The petitioner is the administrator of the estate of Mrs. Whitcomb, who died in 1921. The will of A. C. Whitcomb contained no direction for the computation of trust income, none for the keeping of the trustee's accounts, and none for any allowance or deduction representing depreciation. Beginning about 1906, the trustee converted trust assets into real estate and other forms of investment

subject to depreciation. In fiduciary income tax returns for 1921 and subsequent years, the trustee deducted from gross income an amount representing depreciation, but failed to withhold from the beneficiaries, to whom he paid income, the amount of the depreciation deduction, so that each beneficiary was paid his or her full ratable share of income for the taxable year. As Mrs. Whitcomb died in 1921, a portion of the year's income was paid to her and a portion to the petitioner as her administrator. Neither the petitioner, as administrator of Mrs. Whitcomb, nor any of the other beneficiaries, included in their returns, as income received, that proportion of the income represented by the depreciation deduction shown on the trustee's fiduciary return.

The applicable sections of the Revenue Act of 1921 [1] are:

"219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or any kind of property held in trust, including . . . (4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct.

"(d). In cases under paragraph (4) of subdivision (a) . . . the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not, . . ."

In the belief that these provisions warranted his action, the Commissioner of Internal Revenue increased the income shown on the petitioner's return by so much of the amount received as reflected the proportionate share of

[1] Revenue Act of 1921, c. 136, § 219, 42 Stat. 246.

the depreciation deducted by the trustee in his fiduciary return, and determined a deficiency accordingly. The petitioner appealed to the Board of Tax Appeals.[2]

In 1928, while the case was pending before the Board, the trustee, who had annually rendered income statements to the beneficiaries, but had filed no accounts as trustee, lodged in a California court having jurisdiction of the trust, an account for the period 1903–1928, and prayed its approval. Due notice of the proceeding was given the parties in interest. Certain remaindermen objected to the account, on the ground that the trustee had paid the entire income to beneficiaries without deducting and reserving proper amounts for depreciation and for capital losses sustained. The matter coming on for hearing, the court sustained the objection concerning depreciation and overruled that as to capital losses; found the amounts which should have been reserved for depreciation; refused to surcharge the trustee, but decreed that the life beneficiaries (including the estate of Louise P. V. Whitcomb) repay to the trustee the amounts which he should have withheld annually for depreciation.. The sum fixed for the year 1921 was $43,003.16, which the Board of Tax Appeals has found was the correct amount, a pro rata share of which the petitioner had deducted from the reported income of Louise P. V. Whitcomb. Pursuant to this decree the petitioner repaid $10,700 to the trustee, which was more than petitioner's share of the required repayment for the year 1921. Since, however, Mrs. Whitcomb's estate owed additional amounts for each of the

---

[2] The propriety of taxing the full amount of the annual distributions of income in this estate in the years 1918–1920 was tested by certain of the beneficiaries. *Whitcomb v. Blair*, 58 App.D.C. 104; 25 F. (2d) 528; *Appeal of Louise P. V. Whitcomb*, 4 B.T.A. 80. It was held in those cases that the beneficiaries must return what they in fact received and that depreciation, as it affected only capital assets, and not income, could not be deducted by the life beneficiaries.

years 1913–1928, the balance was adjusted by a promissory note of her next of kin. Other beneficiaries also gave notes in settlement of amounts due the trustee.

The Board of Tax Appeals reversed the Commissioner.[3] The state court's judgment was held conclusive of the fact that no part of the sums paid to the beneficiaries out of the amount required to be deducted by the trustee for depreciation belonged to them; and the conclusion was, therefore, that the amount distributable to the petitioner's decedent for 1921 was the income of the trust due her, less her proportionate share of the sum representing depreciation of the trust property.

The Commissioner petitioned the Circuit Court of Appeals to review the decision, and, after hearing, the court reversed the Board and sustained the Commissioner's ruling.[4] The case is here on writ of certiorari.[5]

The petitioner insists the plain meaning of § 219 is that an income beneficiary of a trust shall pay tax, not on so much of the income as he actually receives, but on the amount he should properly have received in any tax year. His position is that if the amount of income properly " distributable " to him is in excess of the amount paid, he must return and pay tax on the larger amount, irrespective of when in the future he may actually re-

---

[3] 22 B.T.A. 118.

[4] 62 F. (2d) 733.

[5] Other beneficiaries prosecuted like appeals to the Board with like result. The Circuit Court of Appeals for the Ninth Circuit reversed the Board and the taxpayers were granted certiorari in Numbers 130 and 131. The Court of Appeals of the District of Columbia reversed the Board in the cases of six beneficiaries, 65 F. (2d) 803, 809. These cases are also here on certiorari as Numbers 139–144, inclusive. By a stipulation filed in this Court, November 15, 1933, if the judgment of the Circuit Court of Appeals be affirmed in this case, the like judgment shall be entered in the other cases enumerated, and if the judgment in this case be reversed, the like judgment shall be entered in the others.

ceive the balance due him for the year in question. In this view the respondent concurs. But conversely, says the petitioner, if in any year the beneficiary is actually paid more than is properly distributable to him, he should not return and pay tax on the excess to which he was not entitled. The respondent disagrees with this proposition. If the question be decided in favor of the respondent we need go no further; but if in favor of the petitioner, we must inquire what are the criteria for determining whether the sum actually paid was in fact distributable. On this matter also the parties are in disagreement.

1. Section 219 (a) declares that the income of estates and property held in trust is to bear the same tax as the income of individuals. The tax is measured by the gross income received by the fiduciary, less certain allowable deductions, as in the case of an individual. To clarify and emphasize this purpose it is stated that income received by a decedent's estate in course of administration, income to be accumulated for unborn or unascertained persons, income to be held for future distribution, income to be distributed periodically to beneficiaries, and income received by a guardian, to be held or distributed as the court may direct, is included in the taxable income of the estate or trust. Paragraphs (1) to (4).

Sub-section (b) puts upon the fiduciary the duty of making a return and directs what it shall contain. As respects income which is to be distributed periodically to beneficiaries the return is to include " a statement of the income of the estate or trust which, pursuant to the instrument or order governing the distribution, is distributable to each beneficiary, whether or not distributed before the close of the taxable year for which the return is made."

Sub-section (c) requires the fiduciary to pay the tax on all net income of the estate or trust, save that which is

distributable periodically, but sub-section (d) directs, as respects the sort of income last mentioned, " the tax shall not be paid by the fiduciary," but in computing the income of each beneficiary there shall be included " that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not, . . ."

Sub-section (e) covers a case where the total income to be returned by a fiduciary is made up of two classes, as e. g. a portion to be held and accumulated and a portion to be distributed periodically to beneficiaries. The fiduciary must then prepare his return as if he were required to pay the tax on the whole and enter " as an additional deduction " (in addition, that is, to the usual deductions allowed all taxpayers by the other sections of the Act) that part of the estate or trust income " which, pursuant to the instrument or order governing the distribution, is distributable during its [the fiduciary's] taxable year to the beneficiaries." To remove all doubt of the intent of the Act, a sentence is added to the effect that in such case each beneficiary's personal income shall include the portion of the trust's income which " pursuant to the instrument or order governing the distribution, is distributable " to him.

Plainly the section contemplates the taxation of the entire net income of the trust. Plainly, also, the fiduciary, in computing net income, is authorized to make whatever appropriate deductions other taxpayers are allowed by law. The net income ascertained by this operation, and that only, is the taxable income. This the fiduciary may be required to accumulate; or, on the other hand, he may be under a duty currently to distribute it. If the latter, then the scheme of the Act is to treat the amount so distributable, not as the trust's income, but as the beneficiary's. But as the tax on the entire net income of the trust

is to be paid by the fiduciary or the beneficiaries, or partly by each, the beneficiary's share of the income is considered his property from the moment of its receipt by the estate. This treatment of the beneficiary's income is necessary to prevent the possibility of postponement of the tax to a year subsequent to that in which the income was received by the trustee. If it were not for this provision the trustee might pay on part of the income in one year and the beneficiary on the remainder in a later year. For the purpose of imposing the tax, the Act regards ownership, the right of property in the beneficiary, as equivalent to physical possession. The test of taxability to the beneficiary is not receipt of income, but the present right to receive it. Clearly, an overpayment to a beneficiary by mistake of law or fact, would render him liable for the taxable year under consideration, not on the amount paid, but on that payable. If the trustee should have deducted a sum for depreciation from the year's gross income before ascertaining the amount distributable to Mrs. Whitcomb and the other beneficiaries, but failed to do so, he paid her more than was properly distributable for the taxable year. Both the language used and its aptness to effect the obvious scheme for the division of tax between the estate and the beneficiary seem so plain as not to require construction. The administrative interpretation has been in accord with the meaning we ascribe to the section; [6] and no decision to the contrary has been brought to our attention.

The respondent suggests that income distributable within the meaning of the section is income which was reasonably regarded by the parties as distributable at the time it was distributed. We think such a construction would do violence to the plain import of the words used.

The respondent relies on *North American Oil Consoli-*

[6] Treasury Regulations 62, ed. 1922, Arts. 345 and 347.

*dated* v. *Burnet,* 286 U.S. 417. That case, however, involved the receipt of income in 1917 through a money award of a court. An appeal was taken and the award was not confirmed by the appellate court until 1922. The taxpayer's claim that the possibility of reversal shifted the receipt of the income to the later year was overruled. Section 219 had no bearing upon the question presented.

2. The will of A. C. Whitcomb contains no direction, and the statutes of California make no provision, as to depreciation of trust assets. In the absence of either, the Circuit Court of Appeals thought the decision of the state court inconclusive in the administration of the federal Revenue Act, and interpreted the will according to the general law of trusts, which was held to forbid deductions from distributable income on account of depreciation, and to place upon the remaindermen the burden of any shrinkage of capital value of that nature. The petitioner challenges the ruling, insisting upon the binding force of the state court's decree. Obviously that decree had not the effect of *res judicata,* and could not furnish the basis for invocation of the full faith and credit clause of the Federal Constitution in the present case. The petitioner, however, says that it furnishes the standard for the application of § 219, since the section plainly so declares; but even if this be not true, the decision settles the property rights of the beneficiaries which § 219 intended should be observed in distributing the burden of the tax.

The first position is supported by citation of the language of sub-section (d) that " there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not . . ." The decree of the state court is said to be the order governing distribu-

tion of this estate. The respondent reads the language as making the terms of the trust instrument controlling where there is one, and resorting to an order only where there is no instrument governing payments of income; and he adverts to the language of sub-section (a) (4) exempting the fiduciary from returning "income collected by a guardian of an infant to be held or distributed as the court may direct," as explaining the use of the word "order" in sub-section (d) and rendering it applicable only to income collected by a guardian. But a moment's reflection will show this is an error. The whole of a minor's income received by his guardian is taxable to the minor irrespective of its accumulation in the guardian's hands, distribution to the minor or payment for his support or education. This is the reason that a fiduciary in receipt of such income is not bound to return it as trust income. Either the minor or his guardian must make the return, but in either case it embraces all the income and is the minor's individual return, not that of the guardian or the trust.[7]

The word "order" must be given some meaning as applied to trust income which is to be distributed periodically; and we think it clear that the section intended that the order of the court having jurisdiction of the trust should be determinative as to what is distributable income for the purpose of division of the tax between the trust and the beneficiary. We understand the respondent to concede the binding force of a state statute, or a settled rule of property, followed by state courts, and, as well, an antecedent order of the court having jurisdiction of the trust, pursuant to which payments were made. But, if the order of the state court does in fact govern the distribution, it is difficult to see why, whether it antedated actual payment or was subsequent to that event, it should

---

[7] See Regulations 62, ed. 1922, Arts. 347, 403, 422.

not be effective to fix the amount of the taxable income of the beneficiaries. We think the order of the state court was the order governing the distribution within the meaning of the Act.

Moreover, the decision of that court, until reversed or overruled, establishes the law of California respecting distribution of the trust estate. It is none the less a declaration of the law of the State because not based on a statute, or earlier decisions. The rights of the beneficiaries are property rights and the court has adjudicated them. What the law as announced by that court adjudges distributable is, we think, to be so considered in applying § 219 of the Act of 1921.

The respondent suggests that the proceeding in the state court was a collusive one—collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax. We cannot so hold, in view of the record in the state court which is made a part of the record here. The case appears to have been initiated by the filing of a trustee's account, in the usual way. Notice was given to the interested parties. Objections to the account were presented, and the matter came on for hearing in due course, all parties being represented by counsel. The decree purports to decide issues regularly submitted and not to be in any sense a consent decree. The court ruled against the remaindermen on one point, and in their favor on another—that here involved,—but refused to surcharge the trustee, for reasons stated, and ordered repayment by the life tenants of overpayments of income consequent on the trustee's failure to withhold sums for a depreciation reserve.

But, it is said, the life beneficiaries gave their notes for the indebtedness due by them to the trust, as determined by the state court, some of which were jointly executed

by those who would take in remainder, and therefore these beneficiaries are permitted to retain and enjoy the full amounts distributed to them without reference to proper deductions for depreciation, and are therefore taxable thereon as income distributed.

After the decree had been entered two of the life beneficiaries delivered their own notes to the trustee. One life beneficiary, who may become possessed of an interest in remainder, gave her note. Louise P. V. Whitcomb's daughter, a life beneficiary, executed her note, in which her two children, who are possible takers in remainder, joined. The notes were without interest, and were payable to the order of those who should be entitled in remainder at the termination of the trust. The persons so entitled are the descendants of the two children of the testator, per stirpes. What persons if any may fill this description is of course unknown. In the event of the failure of issue the ultimate remainder is to Harvard College.

The parties evidently proceeded upon the theory that if the fund were restored to the trust it would be invested and the life beneficiaries would receive the income from it, and that a satisfactory settlement of the matter would be to have the life beneficiaries give their notes payable at the termination of the trust. At most this form of settlement amounted to a concession or gift on the part of the remaindermen to the life beneficiaries. Any advantage obtained by the latter through the adjustment was obviously not effected by the state court's decree, but by the voluntary action of the remaindermen. The decree was a judgment which fixed the rights of the remaindermen and the obligations of the life tenants. If the parties in interest chose to adjust these obligations in some manner other than by present payment of cash, their action in no wise altered the quality of the trustee's overpayments of income. We cannot seize on the form of

the settlement made between the parties either to impugn the good faith and judicial character of the state court's decree, or to ignore the decree and its conclusiveness as to what was in fact and in law income distributable to the beneficiaries under the trust.

The judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE CARDOZO, dissenting.

I assume for present purposes that the duty of the trustee under the will of Mr. Whitcomb has been adjudicated without fraud or collusion by the Superior Court of California, and that the taxing officers of the United States as well as the parties to the accounting must govern themselves accordingly.

I dissent from the conclusion that the effect of the adjudication is to diminish the taxable income of the life beneficiaries to the extent of the difference between the amount actually distributed and the amount that would have been distributed if the trustee had done his duty.

By the decree in its first form, the court adjudged that the trustee was at fault in failing to make an annual reserve for depreciation for the years 1913 to 1927 inclusive, but also adjudged that he had acted in good faith after obtaining the advice of counsel, and should therefore be relieved of any personal liability. By the same decree the recipients of the income were directed to repay to the trustee the excess payments (amounting in all to $622,-440.90) " by making, executing and delivering to said Trustee their respective promissory notes payable without interest at the termination of said trust to the order of the remaindermen under said trust as they may be determined at the time of the termination of said trust."

By an amended decree made the same day (September 19, 1928) the direction to make payment by the delivery of promissory notes was omitted, and the decree there-

upon stood as one commanding payment simply, without statement of the time or manner.

The recipients of the income reverted at once to the method of payment prescribed by the original decree, and did so with the approval of the trustee and the presumptive owners of the remainders. Charlotte A. Lepic, a daughter of the testator, and a life beneficiary, made her promissory note for $305,867.06, payable without interest at the termination of the trust, and her two children, Napoleon and Charlotte, whose interest was solely as remaindermen, were co-makers with her. Louise Whitcomb, a daughter of a deceased son of the testator, made a note fo $118,353.85, signing by her guardian. Her interest was pa tly that of a beneficiary, and partly as the presumptive owner of an estate in remainder. Lydia, whose interest was the same as that of Louise, made her note for a like amount. Marie, the widow of the deceased son, made her note for $69,159.35. Her interest was in income only. All the notes were payable to the order of " the remaindermen under the said trust as they may be determined to be " when the trust is at an end. All were without interest. The sum total of the notes is substantially equal to the total overpayments, except for $10,700, paid in cash by the administrator of the widow of the testator who died during the pendency of these proceedings. There is nothing to show that the cash was applied upon account of the overpayment due for the years covered by the assessment. In the absence of such evidence, the law appropriates the payment to the items first in point of time. The conclusion therefore follows that as to any overpayments made by the trustee during the years of the contested liability for taxes, the limit of any obligation now resting on the beneficiaries of the trust is the payment of these promissory notes to the

persons entitled in remainder when the trust shall terminate.

I assume in aid of the petitioner that an enforcible duty of repayment existing at the time of an assessment of a tax will call for the reduction of the taxable income to the same extent as if repayment has been actually made, though much can be said in support of another view. The existence of a duty is, however, an indispensable condition. If money distributed to a beneficiary is to be freed from taxation on the ground that, though received and enjoyed, it will have to be returned, the recipient must make it plain that burden and benefit are exact equivalents. He must show that the effect of the fulfilment of the obligation to repay will be to cancel all the gain, and leave him in the same position as if the income had never been received.

At the time of the review of these assessments by the Board of Tax Appeals, the California court had announced by its decree that the trustee had distributed to the beneficiaries more income than was due; but the presumptive owners of the remainders had exonerated the recipients from any duty of repayment until the end of the trust, and then without interest upon moneys overpaid. In effect, the act of the fiduciary had been adopted and confirmed to a proportionate extent.* Whether there was ratification or confirmation in a strict and narrow sense is not decisive of the controversy. The law of taxation is more concerned with the substance of economic opportunity than with classifying legal concepts, and tagging them with names and labels. *Burnet* v. *Harmel*, 287 U.S. 103. If the testator had stated in so many words that there should be no deduction for depreciation in distribut-

---

* Cf. American Law Institute, Restatement of the Law of Trusts, § 210.

ing the income, but that at the termination of the trust the beneficiaries would owe to the remaindermen without interest a sum equivalent to the deduction that would otherwise have been made, the result in its practical aspect would have been identical with the one achieved under this will through confirmation or consent. Here the parties by agreement have made their own rule, which relates back to the year when the income was received.

To put the case in another way: the remaindermen might have signed an order before the income was paid over directing the trustee to make no deduction for depreciation of the trust. They did not do so then, but by relation backwards they did it afterwards. Without the aid of the agreement the decree of the California court would have imposed upon the trustee a duty to use diligent endeavor to collect without delay the moneys misapplied. Through the acceptance of these notes the presumptive owners of the remainders absolved him from that duty and thus confirmed his action. Consent or confirmation may supplement a will or deed of trust, with the result that income "distributed" will have become "distributable" also. It may work a like result where the meaning of the instrument has been established by an "order" of a court. The order is no more than evidence of preëxisting rights and duties. If the obligation to make restitution had been extinguished for all time, and the agreement extinguishing it had been proved to the assessing officers before the assessment became final, a court would listen with little patience to the taxpayer's complaint that a tax was not due because there had been an interval during which the money would have been reclaimable if the law had run its course. The situation is not different in principle where the benefits confirmed to the recipients of the income are something less than they would be if the duty to return had been extinguished altogether.

For the benefits, though not complete, are not illusory or trivial. The Commissioner's assessment is supported by a presumption of correctness. If a taxpayer would overthrow it, he has the burden of proving it erroneous, and of fixing in dollars and cents the amount of the error. By the decision just announced, the taxpayer is relieved of that burden. He has received upon account of his taxable income an allowance of the face amount of an indebtedness payable in the future without deduction for the benefits resulting from the time and manner of the payment. How substantial those benefits are will be obvious if we let them pass before us in review.

The beneficiaries, instead of restoring the overpaid income to the corpus of the estate, are permitted to retain it until the termination of the trust and to dispose of it as their own. They gain thereby the benefit of investing or consuming, with the opportunity for profit or enjoyment that goes along with such a privilege. If gain is derived, it is theirs without accountability to any one. If a loss ensues and the money is used up, a court of bankruptcy is open to them, in the event of their insolvency, to discharge the liability. At the making of the notes, their resources may have been adequate to enable them to restore what had been unlawfully obtained. At the time when the notes become due, they may find themselves without a dollar except their interest in the trust estate.

But this does not exhaust the catalogue of benefits. In any reckoning of these, account must be taken of the relation of kinship between makers and payees. Except in remote contingencies the notes will be payable either to the children or descendants of the makers, or to the makers themselves. If the makers are dead at the termination of the trust, they will have had it in their power to write a clause into their wills requiring their descendants who elect to take under the wills to cancel any claim

that has accrued upon the notes. If the makers are then alive, they will have put their names to notes that will be payable to themselves. There is grave doubt, to say the least, whether any one of them will ever have to pay a dollar.

Up to this, attention has been confined to terms of the notes that have to do with the restitution of the principal. The postponement of payment of the principal was, however, accompanied by a provision that there should be no liability for interest. On its face this was a gain. The argument is made, however, that the gain is unreal for the reason that the overpayments, if restored, would be accretions to the corpus of the trust, and that the income on the accretions would be due to the same persons absolved from liability for interest. But this is only a part truth. The makers gained the difference between interest at the legal rate upon the principal of the notes and the lower rate of income likely to be earned by a trustee who invests the funds of a trust in conformity with law. What is even more important, they gained the privilege in the meantime of retaining for themselves what would otherwise be principal in the hands of the trustee and of using it as they pleased.

These are important benefits. They would be unhesitatingly recognized as such by any investor or by any man of business. Some account should be taken of them before we say that the income of the trust was not income in the hands of the beneficiaries, who received it as their own and who for all that appears may never come under a duty to pay it back to any one.

I think the Court of Appeals did not err in upholding the assessment and that its decree should be affirmed.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE join in this dissent.