Estate of August Diel, Deceased, August Diel, Jr., Henry Diel and Daniel Diel, Executors v. Commissioner.
Estate of Diel v. Commissioner
Docket No. 111628.
United States Tax Court
1943 Tax Ct. Memo LEXIS 319; 2 T.C.M. (CCH) 16; T.C.M. (RIA) 43214; May 5, 1943
*319 Howard Berkeley Thomas, Esq., Brix Bldg., Fresno, Calif., for the petitioner. Harry R. Horrow, Esq., for the respondent. SMITH
Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income tax for the calendar years 1938, 1939, and 1940 of $227.98, $521.79 and $2,878.76, respectively. The issue presented is whether the petitioner is liable to income tax for all of the income received from the community property acquired by the decedent prior to July 29, 1927, instead of one-half thereof as contended by the petitioner. Findings of Fact The petitioner is the estate of August Diel, Deceased, which is now being administered in the Superior Court of the State of California in and for the County of Fresno. The income tax returns for the estate for the calendar years 1938, 1939 and 1940 were filed with the collector of internal revenue for the first district of California at San Francisco. The decedent died on September 9, 1937, survived by his widow, Louise Diel and nine children. The will names his sons, August Diel, Jr., Henry Diel, and Daniel A. Diel as executors and provides for the payment of a bequest of $200 per year *320 to his daughter, Mildred Diel, until she shall reach the age of 21 years or until her marriage prior to reaching such age. The residue of his estate was devised and bequeathed to his nine children share and share alike. All of the property of which the decedent was possessed at the date of death was community property acquired prior to July 29, 1927, or from community property owned at that date. The property consisted of a 30-acre ranch, a 15-acre ranch, a retail grocery and wholesale liquor business, a few small rental houses, and the residence of the decedent. On September 14, 1937, a petition was filed for the issuance of special letters of administration to August Diel, Jr., the petition alleging that a portion of the decedent's property consisted of a retail merchandising store and that it was necessary that some one immediately take charge of conducting that business. In accordance with that petition August Diel, Jr. was appointed special administrator on September 14, 1937. On September 24, 1937, the will was admitted to probate and August Diel, Jr., Henry Diel and Daniel A. Diel were appointed executors of the will. August Diel, Jr. managed all of the properties of the *321 estate from September 9, 1937, until about February 4, 1941. He consulted with his brothers who were appointed coexecutors on September 24, 1937, and with his mother. As special administrator he took over the complete administration of all of the property of the decedent, including the interest therein of decedent's widow. He filed his first and only account as special administrator on October 1, 1937. This account covers all of the property of the decedent, including the community interest of the widow. In his account the administrator charged himself with all moneys from the property of the decedent, including the cash from sales of merchandise, from the grocery and liquor business, and credited himself with disbursements made in carrying on that business. The account states that the special administrator surrendered to the executors of the estate cash in the amount of $3,917.88 and all the merchandise assets and property of every kind and nature received by him as special administrator of the estate. The executors issued their receipt therefor. Shortly after the death of the decedent there was a conference among all the children and the widow. At such conference it was stated *322 that it was understood by the children that their mother was to have onehalf of all of the property of the decedent and that the other one-half was to go to the children. The mother stated that she wished the property to be managed together with the other property and stated that she wanted to stay a "partner" with the children. At the time of the discussion above referred to no deeds or other documents were executed. There was no physical separation of any of the properties which belonged to the decedent. The decedent had a bank account during his lifetime and after his death the bank account was turned over to the executors. The account was placed in the name of the "Estate of August Diel" with the right on the part of the three executors to draw on the account. All of the property of the decedent. including the commodity interest of the widow was operated as a unit. The executors consulted with each other and also with their mother. She was consulted in connection with the purchase of equipment, the amount of compensation to employees, and other matters. She was not born in this country and could neither read nor write English. She had helped in the operation of the ranch properties *323 and in the liquor and grocery business prior to the death of her husband. Her participation in such business after the death of her husband was the same as before. All of the cash receipts from the management of the various properties were received by the executors and deposited in the bank account in their names. The books were kept on behalf of the estate by the son of August Diel, Jr., who was an accountant, and covered all of the community property of the decedent and his widow. No separate account was kept for the widow except one showing the withdrawals of cash by her; no segregation was made of the profits; and there was no credit of those profits to the account of the mother. At the date of his death the decedent owed various debts, including a $2,000 personal note payable to the Bank of America and a $2,500 note secured by a mortgage on the 30-acre parcel of land. The personal note was paid in December, 1937, and the secured note in 1940. The doctors' bills and funeral expenses were paid in 1937. The attorney for the estate was paid in part in groceries. A settlement was effected after the estate was closed at which time the attorney was paid a balance of $66 then owing *324 to him. The widow made withdrawals from the grocery business as follows: 1938
$ 658.14
1939
678.74
1940
1,183.64
She likewise obtained her groceries from the store, the value of which approximated about $35 or $40 a month. The withdrawals of the mother were made in the same way they had been made in the decedent's lifetime. The withdrawals of money were recorded on the books of the estate as expenses and were charged against profit and loss. The withdrawals of groceries were not. Distribution of the assets of the estate was held up until Mildred Diel, who was receiving $200 annually, obtained her majority. She married on December 26, 1940, and attained her majority on January 12, 1941. An inventory and appraisement was filed in connection with the estate on February 3, 1941. In such inventory only onehalf of the property of the decedent owned at his death was listed. The first and final account of the executors was filed March 5, 1941. The executors charged themselves with one-half of the cash belonging to the community and with the appraised value of one-half of the real and personal property of the community at the date of death; also with onehalf of the receipts *325 of money during the period of administration, and took credit for one-half of the payments made in the conduct of the business and the full amount of the payments made on behalf of the decedent, such as payments due Mildred Diel, funeral expenses, executors' fees, etc. The total amount of the estate in the hands of the executors for distribution according to the account was $44,654.78. The report and petition for distribution of the estate filed March 5, 1941, states in part as follows: That the whole of the said estate involved in the within proceedings is the community property of said decedent and Louise Diel, the surviving widow of said decedent, and the said Louise Diel is the sole and absolute owner of the remaining one-half interest not involved in the within proceedings, and the within proceedings relate to the undivided one-half interest of all such community property belonging to the within named decedents. The petition prayed for a distribution of the estate to the children in undivided one-ninth interests. On March 25, 1941, the court entered its order and decreed a settlement of the account of the executors and final distribution. The order and decree provides in *326 part as follows: The Court further finds that under the terms of the last will and testament of August Diel, also known as A. Diel, deceased, the said widow of said decedent, Louise Diel, is entitled to take, have and receive nothing whatever; that all of the property left by said decedent is the community property of said decedent and his surviving wife, Louise Diel, and the said Louise Diel is the sole and absolute owner of the remaining one-half interest not involved in the within proceedings, and the within proceedings relate to the undivided one-half interest of all such community property belonging to the within named decedent. Subsequent to the entry of the order an amendment thereto and decree was made. The reason for the amendment was that the children and the widow were selling the 30-acre ranch and the title company would not give a clear title unless the amendment was made. It provides as follows: IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that the undivided one-half interest in and to all property mentioned in said original Decree of Distribution, which is the community property of the said Louise Diel, surviving widow of said decedent, and which is not involved *327 in the within proceedings, is not liable for any debts against said estate as all of such debts have been fully paid and discharged and said widow's interest is not subject to any claims or demands in connection therewith. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there is hereby ordered distributed, and there is hereby set aside and distributed to the said Louise Diel, said surviving widow, her undivided one-half interest in and to all of the community property referred to in said original Decree of Distribution and which interest is hereby made the sole and separate property of said Louise Diel, widow of said decedent. The petitioners filed fiduciary income tax returns on form 1041 for the estate for the calendar years 1938 through 1940. These returns reflect the profits of the entire estate and do not show any deduction from the gross income for amounts paid on behalf of the decedent's interest in the community property except as follows: 1938
Miscellaneous Expense for es-
tate
$ 39.92
1939
Estate Expense
18.35
1940
Estate Expense
2,189.00 They show as distributable income to the widow one-half of the net income of the estate as follows: 1938
$ 3,557.03
1939
5,655.60
1940
10,465.92
*328 The amounts thus shown as distributable income to the widow were reported as taxable income in returns filed by her. In the determination of the deficiencies the respondent has added to the net income reported in the fiduciary returns as taxable to the estate the following amounts: 1938
Distribution to beneficiary
$ 3,557.03
1939
Distribution to beneficiary
5,655.60
1940
Distribution to beneficiary
10,465.92
Estate Expense
2,189.00
All of the property of the decedent, including community interest of the widow, was in the possession and control of the executors of the estate until the decree of distribution and the amendment thereto entered in 1941 by the Superior Court of Fresno County having jurisdiction over the estate. Opinion The question for decision is whether the estate of the decedent is liable to income tax for the calendar years 1938, 1939, and 1940 upon the net income of the entire estate, which it is stipulated constituted community property, or upon only one-half thereof. The petitioners contend that the surviving widow's one-half of the community property became vested upon the death of her husband and that one-half of the income of the estate is taxable *329 to her and one-half of the estate of the decedent. They concede that the respondent correctly disallowed the deduction from gross income of the estate for 1940 of $2,189 representing expenses of the estate, such as executors' fees, etc. The respondent contends that the issue is controlled by the decision of the United States Circuit Court of Appeals for the Ninth Circuit in the case of Rosenberg v. Commissioner, 115 Fed. (2d) 910. In that case the decedent was domiciled in California and he left surviving him a widow and one daughter. The decedent left a certain sum in trust for his daughter and, after providing for certain specific legacies, left the residue to his widow. In addition to what she might receive as residuary legatee she acquired a one-half interest in the community property of the decedent, such property having been acquired prior to July 29, 1927. Part of the community property consisted of shares of stock in a corporation, the dividends on which were treated by the executor as taxable, one-half to the estate and one-half to the widow. The estate contended that while the husband was alive all the community property acquired before July *330 29, 1927, was owned by the husband subject to an expectancy in the widow. The taxpayer conceded that the widow's share of the community property was includable in the gross estate of the deceased husband for purposes of Federal estate tax. Nevertheless, the estate contended that the widow's share of the community property was not and could not be a part of the estate for purposes of the Federal income tax. The court held, however, that in the circumstances of the case all of the community property possessed at the date of death was under administration by the court and that under the internal revenue laws the income from all community property was taxable to the estate as an entity. To the same effect is the decision of the same court in Commissioner v. Larson, 131 Fed. (2d) 85. There the question was whether the income from community property in the hands of the executor of the deceased husband's estate was taxable in its entirety to the estate or whether one-half of such income was taxable to the surviving widow. The estate was being administered under the laws of the State of Washington. Admittedly during the lifetime of the husband the income from *331 the community property was taxable one-half to the husband and one-half to the wife. The court held, nevertheless, that where one member of the community is dead and his estate is being probated the entire community income is taxable to his estate. In the instant proceeding the petitioners make the further contention that under the provisions of section 162(b) of the Revenue Act of 1938 and section 162 (b) I.R.C., one-half of the income of the estate during the period of administration was currently distributable to the widow and therefore should be allowed as a deduction from the gross income of the estate, as was done in the filing of the income tax returns here in question. The test of whether income is currently distributable within the provisions of section 162 (b) has been stated in Freuler, Admr. v. Helvering, 291 U.S. 35, to be not the receipt of income but the present right to receive it. Under section 581 of the Probate Code of the State of California the executors of the estate were required to receive rents, issues and profits of all real and personal property of the decedent, including the community property interest of the widow during *332 the period of administration. Section 956 of the Probate Code provides that if the debts have been paid the court must direct the payment of legacies and the distributions of the estate among the persons entitled to it. But if there are debts remaining unpaid, or if for other reasons the estate is not in condition to be closed, the administration may continue for such time as may be reasonable. The evidence in the instant proceeding shows that the order of distribution of the estate and the setting apart of the widow's portion thereof was not entered until after the close of the calendar year 1940. In this situation there is no ground for considering that any part of the income of the estate was currently distributable to the widow during the taxable years involved herein. Decision will be entered for the respondent.