Andrew Jean Stormfeltz v. Commissioner.
Stormfeltz v. Commissioner
Docket No. 108678.
United States Tax Court
1943 Tax Ct. Memo LEXIS 317; 2 T.C.M. (CCH) 32; T.C.M. (RIA) 43222; May 7, 1943
*317 E. H. Gamble, Esq., 910 Realty Bldg., Kansas, City, Mo., for the petitioner. John E. Marshall, Esq., and W. Frank Gibbs, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This is a proceeding for the redetermination of a deficiency in income tax for 1939 in the amount of $49,021.53. The question in issue is the amount of the net income realized by the petitioner in 1939 from the settlement of a suit which the petitioner instituted against his guardian and his sureties several years prior to 1939. The amount paid by the defendants in the settlement of the judgment was $229,971.56. The attorneys representing the petitioner were employed under a contract which provided for the payment of a contingent fee of 40 per cent of the amount collected but not to exceed $80,000. They also were to receive one-half of any fees which the court might award in the judgment. The court found that the petitioner was entitled to recover from the defendants the amount of $246.039.79, of which $93,878.59 was designated as principal and the balance as interest. In order to forestall an appeal and for the purpose of an early settlement of the litigation the petitioner agreed to accept $229,971.56 *318 in settlement of the case and the court entered a judgment in that amount. In his return for 1939 the petitioner reported net income from the settlement in the amount of $35,338.30. He stated therein: * * * After deducting the expenses incurred by the attorneys and paid by them, and their fee of $80,000.00, plus interest, $122,699.48, was received by the taxpayer, and $6,543.44 was paid for his account by the attorneys, at taxpayer's direction for debts of taxpayer which had been guaranteed by the attorneys. This $6,543.44 was therefore income to the taxpayer and makes gross income of $129,242.92 derived by taxpayer from the litigation. Of this sum, however, $93,878.59 represented the return to the taxpayer of assets which the Courts found and had been stolen from him, as will be observed in the opinion of the Circuit Court of Appeals at page 551, 105 Fed. 2d. Deducting this $93,878.59 from the $129,242.92, leaves $35,364.33 which is the amount taxpayer reports as income under this item. The petitioner reported a taxable net income for 1939 of $32,883.30. Upon the audit of the return the respondent added to such amount "Interest received" $100,053.30 making a net income as adjusted *319 of $132,936.69. He explains his adjustment as follows: (a) During the year 1939 you received $93,878.59 principal and $136,092.97 interest in final settlement of a judgment secured by you against a former guardian and his sureties, on account of property inherited by you from your grandfather. Of the amount received $86,637.46 was paid to your attorneys and $13,415.84 was paid out on account of accounting and court costs. In filing your income tax return for the year 1939 you reported on line 11, as other income, $35,364.33 as having been received from that source. It is held that the $136,092.97 interest was taxable income to you, and that the attorney fees and accounting and court costs were not allowable deductions from income. There has been allowed as an offset, interest paid in the amount of $675.34, making a net adjustment of $100,053.30, * * * The petitioner alleges that the respondent erred in his finding that the petitioner paid to his attorneys $86,637.46. He claims that under his agreement with his attorneys they had a vested interest in the judgment which was rendered; that the fees were not paid to the attorneys by the petitioner but were paid to them by the defendants *320 in settlement of the suit. Petitioner therefore argues that the $86,637.46 must be excluded from the $136,092.97 in determining his gross income for 1939. The petitioner further argues that if the full amount of $136,092.97 interest must be included in gross income the respondent erred in disallowing the deduction of attorneys' fees paid (with interest) in the amount of $86,637.46; also in disallowing the deduction of $13,415.84 paid out for accounting fees and court costs. By an amended answer the respondent contends that he erred in excluding from the petitioner's gross income $93,878.59 of the amount of the judgment paid. His present position is that the entire amount of the judgment of $229,971.46 is includable in the petitioner's gross income. The respondent admits, however, that the petitioner is entitled to deduct from gross income accounting costs paid in 1939 in the amount of $4,350 and concedes that if the $229,971.56 paid by the judgment defendants is includable in the petitioner's gross income for 1939 the petitioner is also entitled under section 121 of the Revenue Act of 1942, amending section 23(a) of the Internal Revenue Code, to deduct the full amount of the attorneys' *321 and accounting fees and court costs paid in that year in the settlement of the litigation. The facts have all been stipulated. [The Facts] The petitioner is a resident of Kansas City, Mo. He filed his income tax return for the calendar year 1939 with the collector of internal revenue at Kansas City. It was on a cash receipts and disbursements basis. The petitioner was born February 29, 1904. Petitioner's mother was a daughter of T. W. Ballew. She died at the time of petitioner's birth and petitioner was her only child. T. W. Ballew (hereinafter called Ballew) died intestate on September 18, 1911, leaving petitioner, his grandson, as one of his four equal heirs at law. The other three heirs were Ballew's widow, and his two daughters, Mrs. Jessie B. Hyde and Mrs. Winifred Harrison. The principal business of Ballew was, and for many years had been, the merchandising of lumber and building materials through a chain of lumber yards in northern Missouri and southern Iowa. Up to February 15, 1908, he operated these yards under the name of Ballew Lumber Co. as a sole proprietorship. On February 15, 1908, he executed a bill of sale whereby he conveyed the yards thus operated to *322 a Missouri corporation which he had formed on or about that date under the name of Ballew Lumber Company. The capital stock of the corporation was divided into 10,000 shares and at the date of his death Ballew owned all except four qualifying shares. At the date of his death Ballew Lumber Co. owned retail lumber yards in 12 different places, one being at Princeton, Mo., and another at Jamesport, Mo.
Ballew also owned at the time of his death a number of lumber yards, or a controlling interest therein, which were called "blind" yards. These blind yards were not operated in his name or in the name of the corporation and were not corporate assets. The reason these yards were called "blind" yards is that Ballew kept the fact that he was interested in them secret from the public. On September 28, 1911, administration of Ballew's estate was commenced in the Probate Court of Mercer County, Missouri, which court appointed Ben C. Hyde, husband of Jessie B. Hyde, and Luther J. Stormfeltz, father of the petitioner, as administrators thereof. On November 8, 1911, Luther J. Stormfeltz was appointed guardian and curator of the person and property of his son, the petitioner, by the Probate Court *323 of Mercer County, Missouri, and was required to give a guardian's bond in the sum of $250,000. He gave such bond with Title Guaranty & Surety Co. (whose liability was later assumed by American Surety Co.) as surety. Luther J. Stormfeltz had little to do as administrator of the estate of Ballew. The active administrator was Ben C. Hyde. The administration of the estate was closed on May 17, 1913. The Ballew estate was inventoried and appraised at $706,850.84. This inventory and appraisal included the capital stock of Ballew Lumber Co. and much other property of Ballew but did not include the whole of his estate. It entirely omitted the "blind" lumber yards as well as other assets of the estate of large value. None of the property or funds so omitted from the inventory was administered. It was all distributed as unadministered assets among the heirs by mutual consent of themselves and Stormfeltz as guardian of petitioner. Before the administration of the estate was closed petitioner's guardian arranged to sell or exchange petitioner's share of stock in Ballew Lumber Co. and his interest in other assets of the estate for a 100 percent interest in two lumber yards owned by Ballew Lumber *324 Co., one at Princeton and the other at Jamesport, Missouri, and for cash in the amount of $49,384.27. Upon the receipt of this amount of cash the guardian deposited it in his own bank account. Thereafter the guardian managed the Jamesport and Princeton lumber yards from the date of his acquisition of them until the petitioner became of age in 1925. During that time he withdrew from moneys earned or used in connection with the operation of those yards $44,494.32. These withdrawals were made over a period of years from January 2, 1913, to December 6, 1924. When petitioner became 18 years of age he began to participate personally to some extent in the operation of the two yards under the management of his guardian and so continued increasingly until he became of age. From the time the petitioner became of age (February 28, 1925) onward continuously for over four years petitioner operated both yards. Some time in 1929 he sold the stock in trade and the real estate of the Princeton yard; and at some time during 1931 he sold the stock in trade and the real estate of the Jamesport yard. At the time when petitioner sold the Princeton and Jamesport yards, he did not sell them subject to *325 the yard debts and he did not sell the accounts and bills payable and receivable. He retained them and henceforth proceeded to wind up the business of the yards as it had been conducted by and for him up to the time of the above-mentioned sales. In so doing. he settled what he could of the bills and accounts receivable. These were accumulated from many years of business. Some of them ultimately proved uncollectible and worthless. Some were good, but slow. For some of them petitioner obtained security. Some were paid; others were not. (So stipulated.) After petitioner had sold the physical property of both yards, the business of winding up their financial affairs occupied petitioner for several years and constituted his main and regular business during that time. It involved thousands of dollars. The amounts he realized thereon came to a large sum, not counting what he finally collected on the yard accounts from his guardian's sureties in settlement of the judgment which he obtained against the guardian and them. (So stipulated.) While petitioner was occupied in winding up the lumber business he encountered various items in the yard books which evidently reflected on his guardian. *326 He consulted an attorney and was advised to employ a firm of certified public accountants to examine the books of the Princeton and Jamesport yards. This examination disclosed that petitioner's guardian had abstracted funds which belonged to him and had not accounted for them in accounts filed with the court as guardian. The petitioner had also learned that his guardian had not accounted to him for all of his inheritance. Petitioner engaged counsel and started suit against his guardian and the Title Guaranty & Surety Co., his guardian's surety. Suit was commenced on March 21, 1931, in the Circuit Court of Green County, Missouri, from which defendants removed it to the Federal District Court at Springfield; from there by stipulation of the parties it was transferred to the Federal District Court at Kansas City, Missouri, where all trial court proceedings thereafter took place. The first judgment of the District Court was against the petitioner but it was reversed in State of Missouri ex rel. and to Use of Stormfeltz v. Title Guaranty & Surety Co. et al., 72 F.2d 595, by the United States Circuit Court of Appeals for the Eighth Circuit which remanded *327 the case for further proceedings in accordance with its opinion. The petitioner in said suit as it was finally amended was in 69 counts. Twenty-eight of these counts were dismissed. That left 41 remaining counts which were not dismissed and on which the case was tried, resulting in judgment by the trial court on June 30, 1937, whereby one of the counts was decided against petitioner and the other 40 counts in his favor. Of the 40 counts decided in petitioner's favor counts 1, 3, and 4 were for derelictions of the guardian with respect to three items which did not appear on the books of the Princeton or Jamesport yards and had nothing to do with their operation. The other 37 counts all involved items in petitioner's books and were for abstractions made from those yards from time to time by the guardian during said guardianship and in the course of his operation thereof for petitioner. From the judgment obtained in the District Court the sureties appealed to the United States Circuit Court for the Eighth Circuit which, on June 26, 1939, reversed the judgment as to count number 4 and affirmed it with certain modifications as to the other 39 counts. That case is Title Guaranty & Surety Co. et al. v. State of Missouri ex rel. and to Use of Stormfeltz, 105 F.2d 496. *328 The judgment on the 39 counts as thus modified and affirmed amounted to $246,039.79, made up as follows: Principal
Interest
Sum
Thereon
Count 1
$36,974.27
$59,916.81
Count 3
12,410.00
35,893.73
Count 6 et seq., except
counts 10, 12, 18, 67
and 68
44,494.32
52,923.17 and $3,427.49 which latter figure relates to counts 10, 12, 18, 67 and 68, which counts in turn relate to the ward's money wrongfully abstracted by the guardian from the Jamesport and Princeton lumber yard accounts prior to the commencement of the litigation. This figure of $3,427.49 was broken down in accordance with the language of the court as follows: Simple interest
$2,451.21
Interest on simple interest
976.28
On July 8, 1939, before transmittal to the trial court of the mandate of the United States Circuit Court of Appeals directing compliance with its judgment of June 26, 1939, and within the time allowed by law for the sureties to suspend the finality thereof by filing in appellate court a motion for rehearing the sureties entered into a stipulation with petitioner and his attorneys whereby they waived their right to file such motion and agreed to pay, and petitioner and *329 his attorneys agreed to accept $16,000 less than $246,039.79 in full settlement of all claims against the sureties. On July 15, 1939, after the mandate of the United States Circuit Court of Appeals had been transmitted to the trial court the parties duly appeared therein and filed abovereferred to stipulation in open court, making a further slight adjustment with respect to certain appellate court costs, and the appellate court, in accordance with the stipulation and adjustment, entered a final judgment against the sureties and in favor of the petitioner of $229,971.56. The judgment of July 15, 1939, was forthwith recorded and petitioner endorsed a release on the margin of the trial court record thereof, and in satisfaction of the judgment the sureties delivered to petitioners' attorneys a cashier's check of the First National Bank of Kansas City, Missouri, in the amount of the judgment, $229,971.56, payable on its face jointly to petitioner and to his attorneys. The aforesaid check for $229,971.56 was, on July 15, 1939, by mutual agreement of petitioner and his attorney placed in the trust department of the Union National Bank of Kansas City, Missouri, where it was held without *330 endorsement in trust for the payees thereof until August 5, 1939. Petitioner's attorneys were employed by the petitioner under a written contract executed February 4, 1931. This contract provided in part as follows: It is further agreed by Andrew Jean Stormfeltz, and each and all of said attorneys above named, that for the services rendered and to be rendered in the above matter said attorneys are to have a fee of forty (40%) per cent of any amount realized in or from or by reason of said claims, but said fee of said attorneys is not to exceed the sum of Eighty Thousand ($80,000.00) Dollars. However, in addition to the fee stated above said attorneys are to receive one-half or fifty per cent of any amount allowed by the court or recovered in any manner as attorneys fees and said Andrew Jean Stormfeltz is to receive the other fifty per cent of any such attorney fee. It is further agreed that any judgment rendered in any proceedings herein shall liquidate the fees and interests of the parties in the amounts set forth above. While the case was pending in the trial court, a memorandum of agreement was executed by petitioner with his attorneys on October 22, 1936, which provided in *331 part that in the event of disability of any of the attorneys the survivors should continue their services without diminution of the contingent fee: * * * which is 40% of whatever amounts may be collected on said claim, and shall be paid to and apportioned among said attorneys or their respective estates, as though no such death or disability had occurred, * * * (2) The fee of said attorneys is not to exceed the principal sum of $80,000.00; and upon reduction of said claim to judgment 40% of such judgment up to the sum last aforesaid shall vest in them or their estates; but if nothing is realized on said claim or judgment based thereon, they shall receive nothing for their services; and no compromise of said claim is to be made without the consent of the party of the first part. On August 5, 1939, petitioner and his attorneys, endorsed the $229,971.56 check and delivered it to the Union National Bank and, pursuant to the directions of the endorsers, the bank immediately paid to the attorneys the following amounts: (1) The sum of $86,637.46 mentioned in the notice of deficiency, which sum represented the $80,000 fee of said attorneys in said judgment as enhanced to the extent of *332 $9,706.65 by the 6 per cent annual interest rate borne thereby from the date of its original rendition, June 30, 1937 to July 8, 1939, less a $3,069.19 voluntary deduction contributed by said attorneys in order to promote and facilitate the aforesaid settlement of said judgment with said sureties. (2) The sum of $13,415.84 also mentioned in the notice of deficiency, which sum in accordance with petitioner's directions said attorneys applied as follows: (a) To the reimbursement of said attorneys for expenses which they previously had incurred upon behalf of petitioner in the preparation and trial of said suit, including the cost of taking and transcribing depositions, expense for court reporter in connection with the trial evidence, printing expenses for briefs in the Court of Appeals, railroad fare, hotel bills, traveling expenses, and other expense items incurred in and about the preparation and prosecution of said litigation, amounting in all to $9,165.84. (b) To the payment on October 6, 1939, of $4,250.00 to Frazier Dell and Company, certified public accountants, for professional services which they rendered in analyzing and testifying with regard to the books of said Jamesport *333 and Princeton Lumber Yards in respect to the counts of his petition in said suit subsequent to count No. 4 thereof. [So stipulated.] The remainder of the $229,971.56 left after the foregoing application of said sums of $86,637.46 and $13,415.84 was $129,918.26. This amount was on August 5, 1939, paid by the bank to the petitioner or to his order. [Opinion] 1. We consider first the amended answer filed by the respondent by which he asks for an increase in the deficiency. The deficiency in income tax of $49,021.53 was determined upon the theory that the judgment paid in the settlement of the litigation, namely, $229,971.56, was composed of two items as follows: Principal
$ 93,878.59
Interest
136,092.97
Total
$229,971.56
By his amended answer the respondent alleges that he erred in including only the interest in gross income; that the total amount of the judgment should have been included in the gross income. The burden of proof for an increase in the deficiency is upon the respondent. He has submitted no evidence in support of his claim for such increase other than such as derives from the stipulated facts. These show the $93,878.59 as principal. The amount is *334 made up of $49,384.27, a recovery of petitioner's inheritance from his grandfather, and $44,494.32 representing funds due the petitioner from the operation of the Princeton and Jamesport lumber yards during the years prior to 1925, which the guardian did not account for to his ward. We think it plain that recovery of the $49,384.27 representing a part of the petitioner's inheritance is not taxable income; for the receipt of an inheritance is by statute declared to be exempt from income tax. In Freuler, Admr. v. Helvering, 291 U.S. 35, 78 L. Ed. 634, 54 S. Ct. 308, it was said: * * * The whole of a minor's income received by his guardian is taxable to the minor irrespective of its accumulation in the guardian's hands, distribution to the minor or payment for his support or education * * * Either the minor or his guardian must make the return, but in either case it embraces all the income and is the minor's individual return, not that of the guardian or the trust. Whether the $44,494.32 representing the recovery by the petitioner of funds which had been wrongfully withheld from him by the guardian represented income which was never accounted for by the guardian in income tax returns *335 is not shown by the stipulated facts. For all that appears to the contrary the income tax returns filed by the guardian reported the full profits from the operation of the two lumber yards. Whether this is true or not appears to be immaterial, for under the decision of the Supreme Court in Freuler, Admr. v. Helvering, supra, the petitioner as the ward was liable to income tax in those years for the profits of the yard. The recovery of them by the ward in 1939 was a recovery of capital. Upon the record it must be held that the respondent has not sustained his burden of proof of showing that any part of the $93,878.59 stipulated to be principal constituted taxable income of the petitioner for 1939. Motion of the respondent for an increase in the deficiency in income tax for 1939 is therefore denied. 2. The second question is whether there should be excluded from the gross income the $86,637.46 representing the attorneys' fees with interest which came out of the judgment. The petitioner submits that under the agreement which he had with his attorneys, dated October 22, 1936, they became joint owners with him of the judgment later obtained against the *336 guardian and sureties; that their interest therein was $80,000 that on the date the judgment was rendered that interest became vested in the attorneys; that petitioner had no right to the amount due his attorneys; that he did not own it; and that it was no part of his income. It is not necessary to discuss the petitioner's contention upon this point; for reasons stated below we are of the opinion that the petitioner is entitled to deduct from his gross income of 1939 the attorneys' fees paid. 3. The third question is whether petitioner is entitled to deduct from gross income the attorneys' fees paid in the amount of $86,637.46 and the $13,415.84 representing accountants' fees and court costs. The petitioner claims the right to the deduction of the full amount as ordinary and necessary expenses paid or incurred in the carrying on of a trade or business; or under section 23(a) I.R.C. as amended by section 121 of the Revenue Act of 1942. The amendment provides for the deduction from gross income of "non-trade or non-business expenses" and says: In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection *337 of income, or for the management, conservation, or maintenance of property held for the production of income. The amendment is made retroactive to cover the calendar year 1939 and prior years. We are of the opinion that the attorneys' fees paid in the amount of $86,637.46 and the accountants' fees and court costs in the amount of $13,415.84 are comprehended by the amendatory language above quoted. They were expenses for the conservation of property held for the production of income. Decision will be entered under Rule 50.