Jane Brady Moseley v. Commissioner. Frederick S. Moseley, Jr. v. Commissioner.
Moseley v. Commissioner
Docket Nos. 7047, 7048.
United States Tax Court
1949 Tax Ct. Memo LEXIS 261; 8 T.C.M. (CCH) 166; T.C.M. (RIA) 49042; February 17, 1949
Carter T. Louthan, Esq., 20 Exchange Place, New York 5, N.Y., for the petitioners. J. Richard Riggles, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing, involved deficiencies in income *262 tax for 1941 for Jane Brady Moseley in the amount of $1,467.33, and for Frederick S. Moseley, Jr., in the amount of $1,888.93. The issues raised by the pleadings are: (1) Whether the petitioners are entitled to deduct losses from the operation of a farm as business losses. (2) Whether accrued trustees' commissions are deductible in computing the trust income distributable to petitioner, Frederick S. Moseley, Jr., in the taxable year from a testamentary trust created by his father where the trustees filed their returns on the cash receipts and disbursements basis, but the commissions were not paid until the following year. (3) Whether petitioner, Frederick S. Moseley, Jr., correctly stated the amount of income distributable and taxable to him from an inter vivos trust created by his father under which the payments of income were discretionary. The third issue was disposed of by a stipulation, filed after the hearing, that the petitioner, Frederick S. Moseley, Jr., overstated his taxable gross income for 1941 in the amount of $2,220.39. Some of the facts were stipulated as to the remaining issues, and the stipulation filed is incorporated herein by reference. Findings of *263 Fact The petitioners, Frederick S. Moseley, Jr., and Jane Brady Moseley, are husband and wife and reside at Far Hills, New Jersey. They filed separate individual income tax returns for the calendar year 1941 with the collector of internal revenue for the second district of New York. Mr. Moseley, hereinafter referred to as the petitioner, is a partner in a New York City investment firm, reporting income in 1941 from that source of $29,370.21. He also has substantial income from trusts created by his father. He devotes all his time, except Saturdays and Sundays and vacation periods, to his investment business in New York, commuting between Far Hills, New Jersey, and New York City each business day. Mrs. Moseley has an independent income, reporting in 1941 fiduciary income of $29,368.12 and dividends of $35,114. The petitioner and his wife had been interested for several years in purchasing a farm in the vicinity of New York City. In December 1935 they purchased and took title to, as tenants by the entirety, a farm of approximately 530 acres near Far Hills, New Jersey. This farm consisted of about 132 acres of wooded land, about 207 acres of pasture and open land, about 180 acres *264 of land under cultivation and about 10 acres of grounds in connection with their residence on the property. There are two streams on the land, one watering the pastures and the other crossing the property for about a mile. The buildings on the farm at the time of purchase consisted of the owner's residence, a small frame house, two barns, which were in poor condition, and several out buildings. The residence, which is occupied by the petitioner and his wife, is a large whitwashed stone house with slate roof, having from 20 to 30 rooms and seven baths. Shortly after purchasing the farm the petitioner purchased five cows and one bull as a nucleus for a herd of beef cattle. They were cared for by a tenant farmer named Robinson in consideration of the rent free use of the farm. The cattle were of a breed particularly suitable for beef production and were of good quality breeding stock. On May 1, 1940, when the herd had increased to 29 animals, solely as a result of natural increase, Robinson was hired as a full-time salaried manager for the farm. He also had one helper. Both men were paid the prevailing wages for farm labor at that time, since they were dirt farmers and were not *265 experienced stock men. There was a handy man who worked around the petitioners' residence, leaving Robinson and his helper free to do the farm work. The equipment used on the farm was, in part, that formerly owned and used by Robinson as a tenant farmer. The petitioner also put two work horses on the farm, but they were later replaced by mechanical equipment. Only necessary repairs have been made to the buildings and equipment during the time the petitioner and his wife have owned the property. The petitioner and his wife orally agreed to share the profits and losses of the farm equally. Separate capital accounts were kept for them, to which their equal shares of the losses sustained were charged. Books of account were maintained on a cash basis. The petitioner and his wife have continued to live on the farm continuously to the present time except for the absence of the petitioner on duty in the Navy from 1942 to 1945 and the absence of his wife from 1942 to 1944. The petitioner devoted some time to the farm outside of his office hours and on weekends. His wife gave some supervision to the farm during his absence in the Navy. Decisions made in the operation of the farm by the *266 petitioner and his wife are made largely in reliance on the advice of the farm manager and others. The petitioner was advised in 1940 by experienced stock farmers and others that he could not operate the farm at a profit with a small herd of cattle but that he should have a herd of about 150 animals to expect a profit. He had only 29 animals on the farm in 1940 and 41 by 1947, although the farm could have supported the size herd recommended to him without additional cost. The herd had an approximate value of $8,800 in 1947 as beef cattle. As breeding cattle it would have been worth about $15,000, but being diseased at that time, it could not have been sold as breeding cattle. The operating results of the farm for the years 1940 to 1947 were as follows: Total
Total Operating
Total
Year
Gross Income
Expenses
Depreciation
Deductions
Loss
1940-41
$ 932.16
$ 5,136.85
$ 659.75
$ 5,796.60
$ 4,864.44
1941-42
555.81
5,530.13
1,012.53
6,542.66
5,986.85
1942-43
1,362.47
5,470.62
1,060.78
6,531.40
5,168.93
1943-44
2,914.78
5,155.58
1,071.61
6,227.19
3,312.41
1944-45
2,554.61
4,958.49
1,056.88
6,015.37
3,460.76
1945-46
3,431.86
5,605.88
986.27
6,592.15
3,160.29
1946-47
3,902.70
7,331.45
1,085.37
8,416.82
4,514.12
Total
$15,654.39
$39,189.00
$6,933.19
$46,122.19
$30,467.80
*267 The capital accounts of the petitioner and his wife for the operating period from 1940 through 1947 are shown below: Frederick S.
Jane Brady
Moseley, Jr.
Moseley
Total Investments
$45,208.52
$ 1,878.35
Withdrawals
3,987.59
800.00
Net Investments
41,220.93
1,078.35
Transfer of Capital
- 18,212.99
+ 18,212.99
Investments
23,007.94
19,291.34
Operating Losses
15,233.91
15,233.89
Net Balance
$ 7,774.03
$ 4,057.45
The petitioners were not engaged, during the taxable year involved, in the business of farming or raising cattle for profit. The petitioner's father, Frederick S. Moseley, Sr., left the residue of his estate in trust for the benefit of the petitioner and others. The will directed the trustees to pay the net income of the trust to the beneficiaries personally in quarterly payments or oftener. The will further directed that the payments to the beneficiaries were to be free from anticipation, alienation, assignment, attachment and pledge, and free from any control by the creditors of the beneficiaries. The trustees of this trust keep their accounts and file their fiduciary income tax returns on the basis of cash receipts and disbursements. *268 The trustees' commissions accrued with respect to 1941 income of the trust were not withdrawn by the trustees until 1942. The original fiduciary income tax return filed for the trust for the calendar year 1941 computed the petitioner's distributable share in the taxable income of the trust as $15,681.38, without any reduction for the accrued trustees' commissions for that year. The petitioner reported this amount as the income of the trust taxable to him in his individual income tax return for 1941. The trustees later filed an amended fiduciary return which reduced the petitioner's distributable share of the trust income to $14,741.69, the reduction of $939.69 being the amount of trustees' commissions chargeable to the petitioner's share of the trust income for 1941. Opinion LEMIRE, Judge: The petitioners contend that they operated the farm as a business for profit and that the losses claimed thereon for 1941 should be allowed as deductions under section 23(e)(1) of the Internal Revenue Code. Section 23(e) of the Internal Revenue Code provides that in computing net income there shall be allowed as deductions in the case of an individual, *269 losses sustained during the taxable year if accrued in a trade or business. Section 29.23(e)-5 of Regulations 111 states that losses incurred in the operation of a farm as a business are deductible within section 23(e). The regulation further states that if an individual is operating a farm in addition to another trade or business, he may deduct the amount of his farm loss from gross income received from other sources provided the farm is not operated for recreation or pleasure. Since it is essential that livelihood or profit be at least one of the purposes for which an enterprise is conducted in order that it may be characterized as a trade or business, the petitioner must prove that he operated the farm in question with the intention and for the purpose of making a profit or producing increase. Plant v. Walsh, 280 Fed. 722; Thacher v. Lowe, 288 Fed. 994. The petitioner's intention at the outset is an important factor in the determination of this question. Farish v. Commissioner, 103 Fed. (2d) 63. The petitioner and his wife testified that they were interested in farming and that they expected to make a profit from the venture. However, *270 intent may be proved by circumstances, and a party's testimony as to his intent may be rebutted by proof of circumstances which are inconsistent therewith. Foran v. Commissioner, 165 Fed. (2d) 705. There have been numerous cases dealing with the problem of determining whether a farm is operated for pleasure or for profit. Analysis of these cases reveals a large number of factors and circumstances which have been taken into account by the courts and given varying degrees of evidentiary weight. No one factor has been accepted as controlling. See discussions in Mertens, Law of Federal Income Taxation, Vol. 5, §§ 28.72, 28.73. The petitioner is a man of substantial means engaged in the investment business in New York City. He had very little time of his own, outside of office hours and commuting time to his office from his home at Far Hills, and so spent only a small fraction of his time on farm matters. During his absence from the farm on duty in the Navy, Mrs Moseley was also absent from the farm much of the time. The petitioner and his wife had relied heavily on the advice of their employees and others in the operation of the farm, and there was no evident difference *271 in operating results of the farm during their long absence. The residential character of the place is indicated by the nature of the residence on the property, the location of the property in relation to the petitioner's office, and the manner in which the farming operations were conducted. Although the petitioner was advised that he could not operate the farm profitably with a small herd and that the farm would support a herd of approximately 150 animals without additional expense, he never made any real effort to put such an economically practical herd on the place. He continued to rely entirely on the natural increase from the few animals which he had had on the place before he moved there. By 1940 he had only 29 animals on the farm and by 1947 only 41, and had sold only a few animals during the entire period of operation. It is true that an enterprise of this sort seldom may be expected to yield profits from its inception and that the fact that it does not yield immediate profits does not in itself prove a lack of profit motivation. However, a relationship of receipts to expenditures which results in consistent losses from year to year over a considerable period does strongly *272 tend to prove a lack of profit motive. The fact that elaborate and wasteful improvements were not made on the farm indicates only an effort on the part of the petitioner to maintain the place with reasonable economy. It does not negate our conclusion that profit was not a motive in the operation of the farm. We are convinced that the petitioner and his wife could have had no more than a mere hope that the farm might some day yield a profit. Such a hope alone is not the purpose, intention, or reasonable expectation of making profits, which is necessary to make the operation of the farm a business. We sustain the respondent in his disallowance of the claimed losses. The remaining issue in this case is whether the petitioner is entitled to reduce his distributable and taxable share of income for 1941 from the testamentary trust created by his father by the amount of trustees' commissions accrued in 1941 but not paid until 1942. The trust kept its books on the cash basis. The petitioner argues that he is liable only on that portion of the net income of the trust which was distributable to him under the terms of the trust instrument as interpreted by state law. He contends that although *273 the trustees' commissions were not deductible by the trust in 1941, since they were not paid in that year, they are deductible in computing the net income of the trust, as that term was used in the trust instrument. The respondent's argument is that since the trust filed its income tax returns on the cash basis, it must compute the income distributable and taxable to the petitioner on the cash basis, deducting only those items actually paid in 1941. Section 162(b) of the Internal Revenue Code provides that the net income of the beneficiary of a trust is the amount of trust income to be distributed currently to the beneficiary whether distributed to him or not. In computing the amount of trust income which is taxable to the petitioner it is necessary to determine the amount of trust income which was properly distributable to him. The trust is not a party to this proceeding and we do not have any question as to the deductibility of expenses by it. The beneficiary is the petitioner here and we are concerned only with the amount of trust income properly distributable and taxable to him. That part of the trust instrument which is pertinent here directs the *274 trustees to divide the net income into a prescribed form for payment to the beneficiaries. The petitioner was entitled to a distribution only of the net income of the trust as the term "net income" was meant in the trust instrument. Freuler v. Helvering, 291 U.S. 35; Baltzell v. Mitchell, 3 Fed. (2d) 428; Frick v. Driscoll, 129 Fed. (2d) 148. The right of the petitioner to a distribution did not depend on the will or discretion of the trustees but on there being enough income to enable them to make a distribution. The trustees had a plain duty to set aside what was sufficient to cover the burdens of the trust and to distribute the balance. McCrory v. Commissioner, 69 Fed. (2d) 688. The test of taxability of trust income to a beneficiary is not receipt of income, but his present right to receive it. "Clearly an overpayment to a beneficiary by mistake of law or fact, would render him liable for the taxable year under consideration, not on the amount paid, but on that payable." Freuler v. Commissioner, supra; Harrison v. Schaffner, 312 U.S. 579; Irish v. Commissioner, 129 Fed. (2d) 468. Since the trustees *275 should have withheld from the distributable income of the trust a sum sufficient to cover the expenses of the trust, including trustees' commissions, but failed to do so, they overstated the amount of trust income properly distributable to the petitioner. Freuler v. Commissioner, supra. The petitioner, the beneficiary of the trust, should pay income tax on his share of trust income, as though the amount of his distributive share had been properly computed. Freuler v. Commissioner, supra; Jones v. Hassett, 45 Fed. Supp. 195. We conclude that the petitioner overstated his taxable income from this trust for 1941 by $939.69, his aliquot portion of the trustees' commissions for that year. Decisions will be entered under Rule 50.