**Virginia B. MUELLER and Gustave A. Mueller, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15904.**

United States Court of Appeals
Fifth Circuit.

Sept. 6, 1956.

Marvin K. Collie, John G. Heard, Houston, Tex. (Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel), for petitioners.

Carolyn R. Just, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., John Potts Barnes, Chief Counsel, Charles E. Lowery, Sp. Atty., Internal Revenue Service, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., A. F. Prescott, Morton K. Rothschild, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

RIVES, Circuit Judge.

The question presented is whether, within the applicable statute and regulation,[1] certain income of a testamen-

---

1. Internal Revenue Code of 1939:

"§ 162. *Net income*

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

    *     *     *     *     *

"(b) [As amended by Sec. 111(b) of the Revenue Act of 1942, c. 619, 56 Stat. 798] There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether dis-

tributed to them or not. As used in this subsection, 'income which is to be distributed currently' includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. * *" 26 U.S.C. 1952 ed., § 162.

Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939:

"Sec. 29.162–1. *Income of Estates and Trusts.*—

    *     *     *     *     *

"From the gross income of the estate or trust there are also deductible (either in lieu of, or in addition to, the deductions referred to in the preceding paragraph of this section) the following:

    *     *     *     *     *

tary trust for the years 1945 to 1948, inclusive, was *"to be distributed currently"* by the trustee to the beneficiary, now Virginia B. Mueller, so that it should be included in computing the net income of Mrs. Mueller for those years.

The trust was established by the will of Mrs. Mueller's father, William D. Boyce, who died June 11, 1929. All of his residuary estate was transferred in trust to be held by the trustees

> "for the use and benefit of my wife and my children and their children and issue of children, as hereinafter set forth, and after paying or reserving out of the income (as distiguished from the principal) of the trust estate all the expenses of managing and preserving the trust properties, including taxes, assessments, repairs, insurance, the compensation of my Trustee, and other reasonable, necessary and proper charges or expenses of the trust, I direct that quarterly the net income shall be divided into six (6) equal parts, * * * one (1) of said parts to be paid to the legally appointed guardian of my daughter Virginia Lee Boyce until she shall become of legal age and after she shall have become of legal age to be paid to her in person for life for her sole and separate use * * *."

The trustees were given comprehensive and unlimited powers and were relieved of any liability for errors in judgment. The will also contains a spendthrift clause and a provision that any stock dividends are to be credited to principal.

The trust was to terminate twenty-one years from the death of the survivor of the life beneficiaries. The principal of the trust was to be conveyed to the grandchildren, or issue thereof, living at such date.

Among the assets of the trust were certain long-term leaseholds on improved real property in the City of Chicago, Illinois, located at 26–28, 30–32 and 500–512 North Dearborn Street. By reason of the unprecedented economic depression in the years following the death of William D. Boyce, all of these leasehold properties were for many years wholly unproductive of income. The carrying charges and expenses of these leaseholds were charged against the other items of income of the trust. From 1931 to 1945 all of the income of the trust estate was consumed by these carrying charges and expenses of the leaseholds. Not only did the leaseholds fail to carry themselves, but they consumed the income earned by the other assets of the trust, and the excess of such carrying charges and expenses was paid out of the principal of the trust and was charged to an income deficit account. On July 1, 1945, the income deficit account of the trust estate reached its peak of $135,339. In 1945, for the first time since 1931, the trust estate earned income on its other assets in excess of that required for the payment of current carrying charges and expenses of the leaseholds. Pursuant to the decision of the trustees, this income was not distributed to the income beneficiaries of the trust but was applied in reduction of the abovementioned income deficit. The income deficit account of $135,339 was not finally wiped out until 1948. In 1945, 1946 and 1947, all of the income of the trust properties was applied, by direction of the trustees, in reduction of the income deficit account, and none of such income was distributed

"(b) Any income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to a legatee, heir, or beneficiary, whether or not such income is actually distributed. For this purpose, it is provided in section 162(b) that 'income which is to be distributed currently' includes income of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary.

\* \* \* \* \*

"Any amount described in (b) and (c) of this section as being deductible from the gross income of the estate or trust shall be included in computing the net income of the legatees, heirs, or beneficiaries, whether distributed to them or not. * * *"

to the taxpayer. Also, a part of the income of the trust estate of 1948 was directed by the trustees to be used to discharge the income deficit account. The trustees, in filing the fiduciary income tax returns for each of the years in question, claimed the following amounts as being the taxpayer's one-sixth of the distributable income of the trust and deducted such amounts in the respective years in arriving at the net income of the trust taxable to themselves as trustees:

1945 ......................... $ 5,202.89
1946 ......................... 5,663.19
1947 ......................... 11,268.40
1948 ......................... 9,744.33

During 1945, 1946 and 1947, none of the income (or any of the principal) of the trust was paid or otherwise distributed to the taxpayer, in cash or in any other form, but rather all of such income was applied against the income deficit account at the direction of the trustees. During 1948, only $2,050 of the income of the trust was actually paid or otherwise distributed to the taxpayer in cash or in any other form. The balance of the $9,744.33, which had been deducted by the trustees on the fiduciary income tax return for 1948, was applied by the trustees to reduce the income deficit account to zero.

In filing her income tax return for 1945, taxpayer did not include any of the above amount ($5,202.89) which was not paid to her, attaching to her income tax return a statement to that effect. She retained counsel to advise her. This was the beginning of a controversy, which persisted until 1951, between the taxpayer and the trustees. On the advice of her counsel, taxpayer contended that the income should be distributed to her if she was to be required to pay the income tax in respect thereof.

On or about August 18, 1949, the taxpayer filed suit in the Circuit Court of Cook County, Illinois, in which she sought to have the action of the trustees of the trust reversed by the court and to require the trustees to restate their accounts by charging to the principal of the trust, rather than the income, the carrying charges and expenses of the leaseholds at 26–32 North Dearborn Street from January 1, 1930, to the date of the complaint, and that at 500–510 North Dearborn Street from January 1, 1932, to the date of the complaint. These aggregate carrying charges and expenses for such leaseholds for such periods amounted to $485,184.58. Upon such restatement the trustees would then be required to pay to the taxpayer her share of the income as disclosed thereby.

On May 21, 1951, the Circuit Court of Cook County, Illinois, entered its decision and decree in the taxpayer's suit in accordance with a compromise agreement of the parties. That decree, after reviewing the facts, found that the carrying charges and expenses of the leaseholds were charged by the trustees to income pursuant to the express provisions of the will, and that if taxpayer were successful in having the accounts of the trustees recast in the manner in which she requested, it would require the distribution of the bulk of the trust estate and leave little thereof for the trustees to administer in the future. The court likewise pointed out that the determination of the conflicting claims of the taxpayer and the trust would necessarily involve further extensive and protracted litigation.

The decree approved in all respects the accounts filed by the trustees therein for the period from April 1, 1938, to December 31, 1950 (covering all of the taxable years involved in this case). Finally, the court decreed that the trust deliver to taxpayer $22,556.50 of the corpus of the trust, which would have passed ultimately to her descendants as remaindermen, upon which she would pay five percent interest per year (to be deducted from her share of the distributable share of the income each year, if any).

The Tax Court held that the decree, having been entered in accordance with

a compromise agreed upon by the parties, was not binding upon the Tax Court, that it remained under an independent duty to construe the provisions of the will, and so construing them, it found,

"nothing to indicate that it was the testator's intent that the future income of the trust was to be applied in the event the current income was insufficient to meet those obligations. To so construe the will would, in our opinion, thwart the primary object of the testator to provide an annual income for his widow and children. Since the trust properties were productive at the time the will was executed, the testator, obviously, did not envision the conditions which later confronted the trustees. We are required to interpret the language used in the light of the conditions existing at the time the will was executed. Accordingly, we are of the opinion that it was the testator's intention that the carrying charges were to be paid only to the extent of annual income.

"Therefore, we hold that petitioner, Virginia B. Mueller, is properly taxable on her pro rata share of the trust income received by the trustees in excess of the current charges for each of the taxable years * * *."

■ For the reasons hereinafter briefly stated, we find ourselves substantially in agreement with the conclusion of the state court that the taxpayer was not entitled to the trust income she sought to obtain for the years 1945 through 1948.[2] We, therefore, pretermit decision of the question of whether the decree of the state court is conclusive upon the Tax Court and this Court.[3]

We are of the opinion that the Tax Court did not give full effect to some of the terms of the trust, such as the direction to pay the cost of preserving the trust properties out of the income[4] and the broad discretionary powers given to the trustees,[5] and the trustees' exercise of such discretionary powers. Cf. Love v. Engelke, 368 Ill. 342, 14 N.E.2d 228.

■ Construing the will as a whole, we do not think that the trustees violated any periodic duty to distribute the income during the years in question, nor that the taxpayer then had any present right to such income. See Freuler v. Helvering, 291 U.S. 35, 42, 54 S.Ct. 308, 78 L.Ed. 634. Commissioner of Internal Revenue v. Stearns, 2 Cir., 65 F.2d 371,

2. In rendering that decree, the Court made an express finding that, "Pursuant to the express provisions of the will, the above mentioned net carrying charges and expenses from January 1, 1932 to August 26, 1949 in the total amount of $251,288.-58 were also, by the Trustees, charged against the income of the said trust estate rather than against principal."

The $22,556.50 ordered paid to the taxpayer was to be paid "out of the principal of the trust estate" and provisions were made for its repayment to the trust. True, there was a recital that the settlement would make it possible for the taxpayer "to pay to the Government the income tax which the Government claims from her * * *", but another part of the decree recognized her right to contest the Government's claim by the use of the expression, "in the event that the position of the Government that the above men-

tioned items must be included in the income taxable to her is sustained * *." We find no estoppel against the taxpayer, nor even an implied understanding that she was foreclosed from contesting the Government's income tax claim.

3. See Gallagher v. Smith, 3 Cir., 223 F.2d 218, 222–226.

4. " * * * after paying or reserving out of the income (as distinguished from the principal) of the trust estate all of the expenses of managing and preserving the trust properties, * * *."

5. "The Trustee shall have all the powers and privileges of an unqualified owner, subject only to the scope, limitations and purposes of the trust herein created, and it is my intention to give to my said Trustee the same and as full powers in respect of my said trust estates as I would have if living. * * *"

373; Commissioner of Internal Revenue v. Lewis, 3 Cir., 141 F.2d 221, 223. The decision of the Tax Court is therefore

Reversed.