CF INDUSTRIES, INC. AND SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
CF Indus. v. Commissioner
Docket No. 9420-88
United States Tax Court
T.C. Memo 1994-107; 1994 Tax Ct. Memo LEXIS 108; 67 T.C.M. (CCH) 2397; March 16, 1994, Filed *108 Decision will be entered under Rule 155. For petitioner: Raymond P. Wexler, William R. Welke, and Todd F. Maynes. For respondent: James S. Stanis. KORNER
KORNER
SUPPLEMENTAL MEMORANDUM OPINION KORNER, Judge: The first opinion in this case was issued as T.C. Memo. 1991-568. In that opinion, the Court, inter alia, found and held that the placing of temporary cash surpluses of petitioner, a nonexempt cooperative, in short-term loan instruments as a cash management device, necessitated by petitioner's sporadic requirements for quick cash, was simply the prudent cash management of short-term cash surpluses, and was not "investment" of funds as that term is understood generally. Rather it was "business done with or for" the patrons of petitioner cooperative within the meaning of section 1388(a)(1).[1] Interest from such short-term placement of cash was to be considered as patronage-sourced income, with the exception that interest on any such debt instruments acquired by petitioner having a maturity of longer than 30 days would not be considered as patronage-sourced income. Upon consideration of cross-appeals herein, the Court of Appeals for the Seventh *109 Circuit affirmed the findings and ruling of the Tax Court, as above, in all respects with the exception that the Court of Appeals vacated and modified that part of the Tax Court's holding with respect to the placement of money by the cooperative in instruments having a maturity of longer than 30 days. The Court of Appeals held that interest on all such money placement by the taxpayer for cash management purposes should be deemed to be patronage-sourced income, regardless of the term of the debt. CF Industries, Inc. v. Commissioner, 995 F.2d 101 (7th Cir. 1993), modifying and affg. T.C. Memo. 1991-568. Respondent then filed a petition for rehearing of the opinion of the Seventh Circuit, claiming that petitioner was required to allocate such short-term *110 interest income between its member and nonmember customers, presumably in proportion to their respective purchases from the cooperative, and that the portion of such income thus allocated to nonmember business should be reclassified as nonpatronage income, and thus ineligible for deduction from petitioner's income. Respondent, in support of this proposition, cited to the requirements of Rev. Rul. 74-160, 1974-1 C.B. 246, which respondent argues requires such an allocation by petitioner. Upon consideration of the petition for rehearing, the Seventh Circuit, considering that this point had not been discussed by the Tax Court, nor included in its opinion, remanded this case to this Court for the purpose of considering the issue which the Court of Appeals felt had not been fully considered by the Tax Court in the first instance. The case is accordingly before us for the sole purpose of considering, in the words of the Seventh Circuit, "whether a nonexempt cooperative that has cash-management income it wishes to deduct from its gross income must allocate that income between its members and its other customers, presumably in proportion to their *111 respective purchases from the cooperative." CF Industries, Inc. v. Commissioner, supra at 106. The case is before us in that posture. We decline respondent's invitation to reclassify the income which is in question in this matter, and our reasons follow. In this case, the Court of Appeals followed and reaffirmed the principles laid down in a long series of cases, viz, that where a cooperative, as a matter of prudent cash management, places its temporary surpluses of cash in short-term debt instruments in order to keep the funds readily available to meet unpredictable cash calls, the interest earned by the cooperative by such short-term debt is not to be considered the "investment" of funds, which would produce nonpatronage income, but is to be considered as patronage-sourced income; i.e., business done with or for the patrons of the cooperative within the meaning of the Code. In this, the Court of Appeals joins this and other courts which have established this principle over recent years. See Cotter & Co. v. United States, 765 F.2d 1102 (Fed. Cir. 1985); St. Louis Bank for Cooperatives v. United States, 224 Ct. Cl. 289, 624 F.2d 1041 (1980); *112 Illinois Grain Corp. v. Commissioner, 87 T.C. 435 (1986); and, most recently, Dundee Citrus Growers Association v. Commissioner, T.C. Memo. 1991-487. The interest income which is at issue here, therefore, is to be considered as patronage-sourced income, eligible for patronage distributions as provided in sections 1382 and 1388, and we find nothing in the statute, in the regulations, in precedent, or in reason to change any portion of such interest income to nonpatronage income, simply because petitioner cooperative, during the years in question, did business with nonmember patrons. The classification of the income here as patronage-sourced does not depend upon any particular sale of its products by petitioner to members or nonmembers of the cooperative; indeed, the interest which was earned here may all have been from nonmembers of the cooperative. The income here is to be considered as "business done with or for" the patrons of petitioner cooperative within the meaning of section 1388(a)(1) because such activity was a necessary part of the cooperative carrying on its business in an efficient and businesslike way. All *113 the interest income thus generated was therefore patronage-sourced income, as the Seventh Circuit has held, and we see no reason to try to disturb it. The story, however, does not end here. Before petitioner can deduct any amounts from its income as patronage dividends, it must be shown that such amounts qualify for a patronage dividend deduction. Section 1382(b) grants the deduction which is allowable. It is not the total amount of patronage-sourced income which the cooperative has, e.g., the interest income from its cash management short-term loans. Rather, the deduction consists of the patronage dividend which is paid. Section 1388(a) defines a patronage dividend as follows: For purposes of this subchapter, the term "patronage dividend" means an amount paid to a patron by an organization to which part I of this subchapter applies -- (1) on the basis of quantity or value of business done with or for such patron, (2) under an obligation of such organization to pay such amount, which obligation existed before the organization received the amount so paid, and (3) which is determined by reference to the net earnings of the organization from business done with or for *114 its patrons.
Such term does not include any amount paid to a patron to the extent that (A) such amount is out of earnings other than from business done with or for patrons, or (B) such amount is out of earnings from business done with or for other patrons to whom no amounts are paid, or to whom smaller amounts are paid, with respect to substantially identical transactions.
As we pointed out in Illinois Grain Corp. v. Commissioner, supra at 450-451, therefore, not all patronage-sourced income is per se deductible from a cooperative's income. It is only that part which is paid to a member patron, in proportion to the business which he has done with the cooperative, and which the cooperative has an obligation to pay him. Other portions of the patronage-sourced income, beyond that which is equitably apportioned to the member patron based on his patronage, is not payable to the member patron and is not deductible. That does not make the interest income in question here any the less patronage-sourced; it simply regulates the amount thereof which is deductible by the cooperative. Under this view of the matter, there is no occasion for this *115 Court to go behind the clear view of the Court of Appeals -- that all the income in question was patronage-sourced. Only a portion of it will be deducted from petitioner's gross income as a patronage dividend: that portion which is distributed to petitioner's member patrons based on the ratable share which the member patron is entitled to, which in turn is determined by the amount of business which he has done with the cooperative -- in this case, purchases of the cooperative's product. As was said some years ago in the case of Linnton Plywood Association v. United States, 236 F. Supp. 227, 228 (D. Or. 1964): To avail itself of the exclusion, a cooperative must satisfy three requirements. (1) The allocation must be made pursuant to a legal obligation existing when the patron transacted business with the cooperative. (2) The allocation must be made out of profits or income realized from transactions with its patrons. (3) The allocation must have been equitably made. * * *
The above was quoted with approval by this Court in Puget Sound Plywood, Inc. v. Commissioner, 44 T.C. 305 (1965). Respondent urges that *116 Rev. Rul. 74-160, 1974-1 C.B. 246, requires that a portion of the patronage-sourced income here be reclassified as nonpatronage simply because petitioner, in the years in question, did a minor amount of sales of its product to nonmember patrons, to whom patronage dividends would not be payable. We think respondent is mistaken in her interpretation of Rev. Rul. 74-160. In that ruling, consideration was given to a situation where short-terms loans of the type involved in this case were made in order for the cooperative to carry on its cooperative business. In addition, some unrelated business was done by the cooperative with outside nonmembers in the form of the cancellation of a lease. Thus, two different and clearly distinguishable types of income were involved: interest on the short-term loans, which the ruling recognizes produced patronage-sourced income, and income from the cancellation of the lease, which the ruling concluded was nonpatronage-sourced. Rev. Rul. 74-160, supra at 246, concluded: Accordingly, to the extent such income is allocable *117 to the member patrons on the basis of business done with or for those patrons, the income is patronage sourced income that may be distributed as patronage dividends. However, to the extent the interest income is allocable to nonmember business it constitutes nonpatronage sourced income that must be taken into account in computing the Federal income tax of taxpayer. * * *
As we read the above quotation, it appears to us that the phrase "to the extent the interest income is allocable to nonmember business" is an inadvertent use of the word "interest". The examples given in the revenue ruling of the two types of income involved -- interest on short-term loans, which clearly was patronage-sourced income, and income from the cancellation of a lease, which was held to be nonpatronage-sourced -- make it clear that the interest income there involved had nothing to do with the transaction of conventional business with nonmembers, but was simply determined outside that frame of reference. The unfortunate use of the word "interest" in Rev. Rul. 74-160, supra, may have caused the confusion which has arisen here, and which accounts for respondent's *118 mistaken interpretation. The matter needs to be set straight: to the extent that the interest income on short-term loans here was patronage-sourced income, as the Seventh Circuit has held it was, in its entirety, and with which we agree, the patronage source of this income does not arise from sales of products made by petitioner to its member patrons. Rather, it is all patronage-sourced income because it results from "business done with or for" its patrons. Having qualified as patronage-sourced income, however, it can only be deducted from petitioner's income to the extent that it is paid to member patrons as a patronage dividend, sec. 1382(b)(1), based upon the preexisting obligation of the cooperative to pay patronage dividends to its member patrons, and based upon the proportionate amount of business transacted by the member patron with the cooperative during the taxable year, sec. 1388(a). The determination of the total amount of cooperative income attributable to member patrons, and the individual share of each member patron, is set forth in Rev. Rul. 74-20, 1974-1 C.B. 242. In this computation, the nonmember patron who purchased *119 a certain amount of petitioner's product is excluded from any proportionate share based upon his business done with the cooperative, because as a nonmember patron he was not entitled to a patronage dividend and, in fact, received none. Sec. 1.1388-1, Income Tax Regs. The patronage dividend income deduction to which petitioner is entitled here, therefore, is based upon that proportion of petitioner's income, or "savings", as cooperatives like to call it, which is attributable to the business done by the member patrons with the cooperative, and is distributed. The pool of income thus available for distribution may be larger than it would otherwise have been without the short-term interest income in question. That is no bar to a deduction here. Petitioner is entitled to a patronage deduction for qualifying patronage distributions paid to its member patrons in proportion to their business done with the cooperative, but no more. Such proportionate distribution, made in accordance with Rev. Rul. 74-10, supra, will automatically take into account that a portion of the income of the cooperative may not be deductible because it was attributable to business *120 from nonmember patrons, and thus did not form part of the member patron's equitable share of the cooperative income. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code as in effect at the time this case arose, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩